# PENNZOIL CO. *v.* TEXACO INC.

No. 85–1798.    Argued January 12, 1987—Decided April 6, 1987

2

POWELL, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and WHITE, O'CONNOR, and SCALIA, JJ., joined. SCALIA, J., filed a concurring opinion, in which O'CONNOR, J., joined, *post*, p. 18. BRENNAN, J., filed an opinion concurring in the judgment, in which MARSHALL,

J., joined, *post,* p. 18. MARSHALL, J., filed an opinion concurring in the judgment, *post,* p. 23. BLACKMUN, J., filed an opinion concurring in the judgment, *post,* p. 27. STEVENS, J., filed an opinion concurring in the judgment, in which MARSHALL, J., joined, *post,* p. 29.

*Laurence H. Tribe* argued the cause for appellant. With him on the briefs were *John L. Jeffers, G. Irvin Terrell, Paul M. Bator, Douglas A. Poe, Kenneth S. Geller, W. James Kronzer, Joseph D. Jamail, Harry M. Reasoner, Simon H. Rifkind, Arthur L. Liman,* and *Mark A. Belnick.*

*David Boies* argued the cause for appellee. With him on the brief were *Thomas D. Barr, Francis P. Barron, Paul J. Curran, Milton J. Schubin, Randolph S. Sherman, Ira S. Sacks, Charles Alan Wright,* and *William F. Baxter.**

JUSTICE POWELL delivered the opinion of the Court.

The principal issue in this case is whether a federal district court lawfully may enjoin a plaintiff who has prevailed in a trial in state court from executing the judgment in its favor pending appeal of that judgment to a state appellate court.

---

*Briefs of *amici curiae* urging affirmance were filed for the State of Alabama et al. by *Robert T. Stephan,* Attorney General of Kansas, *Wayne E. Hundley,* First Deputy Attorney General, *Charles A. Graddick,* Attorney General of Alabama, *Charles M. Oberly III,* Attorney General of Delaware, *Jim Smith,* Attorney General of Florida, *William J. Guste, Jr.,* Attorney General of Louisiana, *Hubert H. Humphrey III,* Attorney General of Minnesota, *William L. Webster,* Attorney General of Missouri, *Ted Schwinden,* Attorney General of Montana, *Toney Anaya,* Attorney General of New Mexico, *Robert Abrams,* Attorney General of New York, *Michael Turpen,* Attorney General of Oklahoma, *Kenneth O. Eikenberry,* Attorney General of Washington, and *Archie G. McClintock,* Attorney General of Wyoming; for the State of Alaska by *Harold M. Brown,* Attorney General, and *Ronald W. Lorensen,* Deputy Attorney General; for the American Federation of Labor and Congress of Industrial Organizations et al. by *John W. McKendree, Laurence Gold,* and *George Kaufmann;* for the Business Council of New York State, Inc., et al. by *John Carter Rice, Gregg R. Potvin,* and *John W. McKendree;* and for the National Association for the Advancement of Colored People by *David S. Tatel, Allen R. Snyder, Walter A. Smith, Jr.,* and *Grover G. Hankins.*

I

Getty Oil Co. and appellant Pennzoil Co. negotiated an agreement under which Pennzoil was to purchase about three-sevenths of Getty's outstanding shares for $110 a share. Appellee Texaco Inc. eventually purchased the shares for $128 a share. On February 8, 1984, Pennzoil filed a complaint against Texaco in the Harris County District Court, a state court located in Houston, Texas, the site of Pennzoil's corporate headquarters. The complaint alleged that Texaco tortiously had induced Getty to breach a contract to sell its shares to Pennzoil; Pennzoil sought actual damages of $7.53 billion and punitive damages in the same amount. On November 19, 1985, a jury returned a verdict in favor of Pennzoil, finding actual damages of $7.53 billion and punitive damages of $3 billion. The parties anticipated that the judgment, including prejudgment interest, would exceed $11 billion.

Although the parties disagree about the details, it was clear that the expected judgment would give Pennzoil significant rights under Texas law. By recording an abstract of a judgment in the real property records of any of the 254 counties in Texas, a judgment creditor can secure a lien on all of a judgment debtor's real property located in that county. See Tex. Prop. Code Ann. §§ 52.001–52.006 (1984). If a judgment creditor wishes to have the judgment enforced by state officials so that it can take possession of any of the debtor's assets, it may secure a writ of execution from the clerk of the court that issued the judgment. See Tex. Rule Civ. Proc. 627.[1] Rule 627 provides that such a writ usually can be obtained "after the expiration of thirty days from the time a

---

[1] A writ of execution is "[a]ddressed to any sheriff or constable in the State of Texas [and] enables the official to levy on a debtor's nonexempt real and personal property, within the official's county." 5 W. Dorsaneo, Texas Litigation Guide § 132.02[1], p. 132–7 (1986).

final judgment is signed."[2]   But the judgment debtor "may suspend the execution of the judgment by filing a good and sufficient bond to be approved by the clerk."   Rule 364(a). See Rule 368.[3]   For a money judgment, "the amount of the bond . . . shall be at least the amount of the judgment, interest, and costs."   Rule 364(b).[4]

Even before the trial court entered judgment, the jury's verdict cast a serious cloud on Texaco's financial situation. The amount of the bond required by Rule 364(b) would have been more than $13 billion.   It is clear that Texaco would not have been able to post such a bond.   Accordingly, "the business and financial community concluded that Pennzoil would be able, under the lien and bond provisions of Texas law, to commence enforcement of any judgment entered on the verdict before Texaco's appeals had been resolved."   App. to Juris. Statement A87 (District Court's Supplemental Finding of Fact 40, Jan. 10, 1986).   The effects on Texaco were substantial: the price of its stock dropped markedly; it had difficulty obtaining credit; the rating of its bonds was lowered; and its trade creditors refused to sell it crude oil on customary terms.   Id., at A90–A98 (District Court's Supplemental Findings of Fact 49–70).

---

[2] If the judgment debtor files a motion for new trial, the clerk cannot issue a writ of execution until the motion for new trial is denied or overruled by operation of law.   Rule 627.   If a trial judge does not act on a motion for new trial, it is deemed to be overruled by operation of law 75 days after the judgment originally was signed.   Rule 329b(c).

[3] Filing a supersedeas bond would not prevent Pennzoil from securing judgment liens against Texaco's real property.   See Tex. Prop. Code Ann. § 52.002 (1984) (directing clerk to issue an abstract of the judgment "[o]n application of a person in whose favor a judgment is rendered"; no exception for superseded judgments); Thulemeyer v. Jones, 37 Tex. 560, 571 (1872).   The bond's only effect would be to prevent Pennzoil from executing the judgment and obtaining Texaco's property.

[4] A judgment debtor also may suspend execution by filing "cash or other negotiable obligation of the government of the United States of America or any agency thereof, or with leave of court, . . . a negotiable obligation of any bank . . . in the amount fixed for the surety bond."   Rule 14c.

Texaco did not argue to the trial court that the judgment, or execution of the judgment, conflicted with federal law. Rather, on December 10, 1985—before the Texas court entered judgment[5]—Texaco filed this action in the United States District Court for the Southern District of New York in White Plains, New York, the site of Texaco's corporate headquarters. Texaco alleged that the Texas proceedings violated rights secured to Texaco by the Constitution and various federal statutes.[6] It asked the District Court to enjoin Pennzoil from taking any action to enforce the judgment. Pennzoil's response, and basic position, was that the District Court could not hear the case. First, it argued that the Anti-Injunction Act, 28 U. S. C. § 2283, barred issuance of an injunction. It further contended that the court should ab-

---

[5] Later the same day, the Texas court entered a judgment against Texaco for $11,120,976,110.83, including prejudgment interest of approximately $600 million. During the pendency of the federal action—that now concerns only the validity of the Texas judgment enforcement procedures—the state-court action on the merits has proceeded. Texaco filed a motion for new trial, that was deemed denied by operation of law under Rule 329b(c). See n. 2, *supra*. Subsequently, Texaco appealed the judgment to the Texas Court of Appeals, challenging the judgment on a variety of state and federal grounds. The Texas Court of Appeals rendered a decision on that appeal on February 12, 1987. That decision affirmed the trial court's judgment in most respects, but remitted $2 billion of the punitive damages award, reducing the principal of the judgment to $8.53 billion.

So far as we know, Texaco has never presented to the Texas courts the challenges it makes in this case against the bond and lien provisions under federal law. Three days after it filed its federal lawsuit, Texaco did ask the Texas trial court informally for a hearing concerning possible modification of the judgment under Texas law. That request eventually was denied, because it failed to comply with Texas procedural rules.

[6] Texaco claimed that the judgment itself conflicted with the Full Faith and Credit Clause, the Commerce Clause, the Williams Act, and the Securities Exchange Act of 1934. Texaco also argued that application of the Texas bond and lien provisions would violate the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the Federal Constitution.

stain under the doctrine of *Younger* v. *Harris*, 401 U. S. 37 (1971).   Third, it argued that the suit was in effect an appeal from the Texas trial court and that the District Court had no jurisdiction under the principles of *Rooker* v. *Fidelity Trust Co.*, 263 U. S. 413 (1923), and *District of Columbia Court of Appeals* v. *Feldman*, 460 U. S. 462 (1983).

The District Court rejected all of these arguments.   626 F. Supp. 250 (1986).   It found the Anti-Injunction Act inapplicable because Texaco's complaint rested on 42 U. S. C. § 1983.   See *Mitchum* v. *Foster*, 407 U. S. 225 (1972) (holding that § 1983 falls within the exceptions to the Anti-Injunction Act).   It found *Younger* abstention unwarranted because it did not believe issuance of an injunction would "interfere with a state official's pursuit of a fundamental state interest."   626 F. Supp., at 260.   As to the *Rooker-Feldman* doctrine, the court noted only that it was not "attempting to sit as a final or intermediate appellate state court as to the merits of the Texas action. . . . Our only intention is to assure Texaco its constitutional right to raise claims that we view as having a good chance of success."   *Id.*, at 254 (citation and footnote omitted).

The District Court justified its decision to grant injunctive relief by evaluating the prospects of Texaco's succeeding in its appeal in the Texas state courts.   It considered the merits of the various challenges Texaco had made before the Texas Court of Appeals and concluded that these challenges "present generally fair grounds for litigation."   *Ibid.* It then evaluated the constitutionality of the Texas lien and bond requirements by applying the test articulated in *Mathews* v. *Eldridge*, 424 U. S. 319 (1976).   It concluded that application of the lien and bond provisions effectively would deny Texaco a right to appeal.   It thought that the private interests and the State's interests favored protecting Texaco's right to appeal.   Relying on its view of the merits of the state-court appeal, the court found the risk of erroneous deprivation "quite severe."   626 F. Supp., at 257.   Finally,

it viewed the administrative burden on the State as "slight." *Ibid.* In light of these factors, the District Court concluded that Texaco's constitutional claims had "a very clear probability of success." *Id.,* at 258. Accordingly, the court issued a preliminary injunction.[7]

On appeal, the Court of Appeals for the Second Circuit affirmed. 784 F. 2d 1133 (1986). It first addressed the *Rooker-Feldman* doctrine and rejected the portion of the District Court's opinion that evaluated the merits of the state-court judgment. It held, however, that the doctrine did not completely bar the District Court's jurisdiction. It concluded that the due process and equal protection claims, not presented by Texaco to the Texas courts, were within the District Court's jurisdiction because they were not "'inextricably intertwined'" with the state-court action. *Id.,* at 1144 (quoting *District of Columbia Court of Appeals* v. *Feldman, supra,* at 483, n. 16).

Next, the court considered whether Texaco had stated a claim under § 1983. The question was whether Texaco's complaint sought to redress action taken "under color of" state law, 42 U. S. C. § 1983. The court noted that "Pennz-

---

[7] The operative portion of the injunction provided:

"[I]t is hereby . . . ORDERED that defendant, Pennzoil Company, its employees, agents, attorneys and servants, and all persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are jointly and severally enjoined and restrained, pending the trial and ultimate disposition of this action, or the further order of this Court, from taking any action of any kind whatsoever to enforce or attempt to enforce the Judgment entered in an action in the District Court for the 151st Judicial District of Texas entitled *Pennzoil Company* v. *Texaco Inc.,* including, without limitation, attempting to obtain or file any judgment lien or abstract of judgment related to said Judgment (pursuant to Tex. Prop. Code Ann. §§ 52.001, *et seq.,* or otherwise), or initiating or commencing steps to execute on said Judgment . . . ." App. to Juris. Statement A52–A53.

The order also required Texaco to post a bond of $1 billion to secure the grant of the preliminary injunction. *Id.,* at A53.

oil would have to act jointly with state agents by calling on state officials to attach and seize Texaco's assets." 784 F. 2d, at 1145. Relying on its reading of *Lugar* v. *Edmondson Oil Co.*, 457 U. S. 922 (1982), the court concluded that the enjoined action would have been taken under color of state law, and thus that Texaco had stated a claim under § 1983. 784 F. 2d, at 1145–1147. Because § 1983 is an exception to the Anti-Injunction Act, see *Mitchum* v. *Foster, supra,* the court also found that the Anti-Injunction Act did not prevent the District Court from granting the relief sought by Texaco.

Finally, the court held that abstention was unnecessary. First, it addressed *Pullman* abstention, see *Railroad Comm'n of Texas* v. *Pullman Co.*, 312 U. S. 496 (1941). It rejected that ground of abstention, holding that "the mere possibility that the Texas courts would find Rule 364 [concerning the supersedeas bond requirements] unconstitutional as applied does not call for *Pullman* abstention." 784 F. 2d, at 1149. Next, it rejected *Younger* abstention. It thought that "[t]he state interests at stake in this proceeding differ in both kind and degree from those present in the six cases in which the Supreme Court held that *Younger* applied." *Ibid.* Moreover, it thought that Texas had failed to "provide adequate procedures for adjudication of Texaco's federal claims." *Id.*, at 1150. Turning to the merits, it agreed with the District Court that Texaco had established a likelihood of success on its constitutional claims and that the balance of hardships favored Texaco. Accordingly, it affirmed the grant of injunctive relief.[8]

Pennzoil filed a jurisdictional statement in this Court. We noted probable jurisdiction under 28 U. S. C. § 1254(2). 477 U. S. 903 (1986). We reverse.

---

[8] Although the District Court had entered only a preliminary injunction, the Court of Appeals concluded that the record was sufficiently undisputed to justify entering a permanent injunction. Thus, it did not remand the case to the District Court for further proceedings on the merits. 784 F. 2d 1133, 1156 (1986).

## II

The courts below should have abstained under the principles of federalism enunciated in *Younger* v. *Harris*, 401 U. S. 37 (1971). Both the District Court and the Court of Appeals failed to recognize the significant interests harmed by their unprecedented intrusion into the Texas judicial system. Similarly, neither of those courts applied the appropriate standard in determining whether adequate relief was available in the Texas courts.

## A

The first ground for the *Younger* decision was "the basic doctrine of equity jurisprudence that courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law." *Id.,* at 43. The Court also offered a second explanation for its decision:

> "This underlying reason . . . is reinforced by an even more vital consideration, the notion of 'comity,' that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways. . . . The concept does not mean blind deference to 'States' Rights' any more than it means centralization of control over every important issue in our National Government and its courts. The Framers rejected both these courses. What the concept does represent is a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States." *Id.,* at 44.

This concern mandates application of *Younger* abstention not only when the pending state proceedings are criminal, but also when certain civil proceedings are pending, if the State's interests in the proceeding are so important that exercise of the federal judicial power would disregard the comity between the States and the National Government. *E. g.*, *Huffman* v. *Pursue, Ltd.*, 420 U. S. 592, 603–605 (1975).

Another important reason for abstention is to avoid unwarranted determination of federal constitutional questions. When federal courts interpret state statutes in a way that raises federal constitutional questions, "a constitutional determination is predicated on a reading of the statute that is not binding on state courts and may be discredited at any time—thus essentially rendering the federal-court decision advisory and the litigation underlying it meaningless." *Moore* v. *Sims*, 442 U. S. 415, 428 (1979). See *Trainor* v. *Hernandez*, 431 U. S. 434, 445 (1977).[9] This concern has special significance in this case. Because Texaco chose not to present to the Texas courts the constitutional claims asserted in this case, it is impossible to be certain that the governing Texas statutes and procedural rules actually raise these claims. Moreover, the Texas Constitution contains an

---

[9] In some cases, the probability that any federal adjudication would be effectively advisory is so great that this concern alone is sufficient to justify abstention, even if there are no pending state proceedings in which the question could be raised. See *Railroad Comm'n of Texas* v. *Pullman Co.*, 312 U. S. 496 (1941). Because appellant has not argued in this Court that *Pullman* abstention is proper, we decline to address JUSTICE BLACKMUN's conclusion that *Pullman* abstention is the appropriate disposition of this case. We merely note that considerations similar to those that mandate *Pullman* abstention are relevant to a court's decision whether to abstain under *Younger*. Cf. *Moore* v. *Sims*, 442 U. S. 415, 428 (1979). The various types of abstention are not rigid pigeonholes into which federal courts must try to fit cases. Rather, they reflect a complex of considerations designed to soften the tensions inherent in a system that contemplates parallel judicial processes.

"open courts" provision, Art. I, § 13,[10] that appears to address Texaco's claims more specifically than the Due Process Clause of the Fourteenth Amendment. Thus, when this case was filed in federal court, it was entirely possible that the Texas courts would have resolved this case on state statutory or constitutional grounds, without reaching the federal constitutional questions Texaco raises in this case.[11] As we have noted, *Younger* abstention in situations like this "offers the opportunity for narrowing constructions that might obviate the constitutional problem and intelligently mediate federal constitutional concerns and state interests." *Moore* v. *Sims, supra,* at 429–430.

Texaco's principal argument against *Younger* abstention is that exercise of the District Court's power did not implicate a "vital" or "important" state interest. Brief for Appellee 24–32. This argument reflects a misreading of our precedents. This Court repeatedly has recognized that the States have important interests in administering certain aspects of

---

[10] Article I, § 13, provides: "All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law."

[11] See *LeCroy* v. *Hanlon,* 713 S. W. 2d 335, 340–341 (Tex. 1986) ("The open courts provision must have been intended to provide rights in addition to those in the due process provision or the former would be surplusage. Furthermore, the due process provision's general guarantees contrast with the open courts provision's specific guarantee of a right of access to the courts"); *id.,* at 338 (noting that the Texas Supreme Court "has been in the mainstream" of the movement of "state courts . . . to look to their own constitutions to protect individual rights") (citing, *inter alia,* Brennan, State Constitutions and the Protection of Individual Rights, 90 Harv. L. Rev. 489 (1977)). See also *Dillingham* v. *Putnam,* 109 Tex. 1, 14 S. W. 303 (1890) (invalidating a previous supersedeas bond statute because it effectively prevented certain parties from securing an appeal).

The relevance of the open courts provision to this case is not limited to its indication that the Texas courts may well accept Texaco's challenge on state constitutional grounds, obviating the need for consideration of the federal constitutional questions. As we explain *infra,* at 15–16, this provision also undercuts Texaco's claim that no Texas court was open to hear its constitutional claims.

their judicial systems. *E. g., Trainor* v. *Hernandez, supra,* at 441; *Middlesex County Ethics Comm.* v. *Garden State Bar Assn.,* 457 U. S. 423, 432 (1982). In *Juidice* v. *Vail,* 430 U. S. 327 (1977), we held that a federal court should have abstained from adjudicating a challenge to a State's contempt process. The Court's reasoning in that case informs our decision today:

> "A State's interest in the contempt process, through which it vindicates the regular operation of its judicial system, so long as that system itself affords the opportunity to pursue federal claims within it, is surely an important interest. Perhaps it is not quite as important as is the State's interest in the enforcement of its criminal laws, *Younger, supra,* or even its interest in the maintenance of a quasi-criminal proceeding such as was involved in *Huffman, supra.* But we think it is of sufficiently great import to require application of the principles of those cases." *Id.,* at 335.

Our comments on why the contempt power was sufficiently important to justify abstention also are illuminating: "Contempt in these cases, serves, of course, to vindicate and preserve the private interests of competing litigants, . . . but its purpose is by no means spent upon purely private concerns. It stands in aid of the authority of the judicial system, so that its orders and judgments are not rendered nugatory." *Id.,* at 336, n. 12 (citations omitted).

The reasoning of *Juidice* controls here. That case rests on the importance to the States of enforcing the orders and judgments of their courts. There is little difference between the State's interest in forcing persons to transfer property in response to a court's judgment and in forcing persons to respond to the court's process on pain of contempt. Both *Juidice* and this case involve challenges to the processes by which the State compels compliance with the judgments of its

courts.[12]   Not only would federal injunctions in such cases interfere with the execution of state judgments, but they would do so on grounds that challenge the very process by which those judgments were obtained.   So long as those challenges relate to pending state proceedings, proper respect for the ability of state courts to resolve federal questions presented in state-court litigation mandates that the federal court stay its hand.[13]

## B

Texaco also argues that *Younger* abstention was inappropriate because no Texas court could have heard Texaco's constitutional claims within the limited time available to Texaco. But the burden on this point rests on the federal plaintiff to show "that state procedural law barred presentation of [its] claims."   *Moore* v. *Sims*, 442 U. S., at 432.   See *Younger* v. *Harris*, 401 U. S., at 45 ("'The accused should first set up and rely upon his defense in the state courts, even though this involves a challenge of the validity of some statute, unless it plainly appears that this course would not afford

---

[12] Thus, contrary to JUSTICE STEVENS' suggestion, the State of Texas has an interest in this proceeding "that goes beyond its interest as adjudicator of wholly private disputes."   *Post*, at 30, n. 2.   Our opinion does not hold that *Younger* abstention is always appropriate whenever a civil proceeding is pending in a state court.   Rather, as in *Juidice*, we rely on the State's interest in protecting "the authority of the judicial system, so that its orders and judgments are not rendered nugatory," 430 U. S., at 336, n. 12 (citations omitted).

[13] Texaco also suggests that abstention is unwarranted because of the absence of a state judicial proceeding with respect to which the Federal District Court should have abstained.   Texaco argues that "the Texas judiciary plays no role" in execution of judgments.   Brief for Appellee 25. We reject this assertion.   There is at least one pending judicial proceeding in the state courts; the lawsuit out of which Texaco's constitutional claims arose is now pending before a Texas Court of Appeals in Houston, Texas. As we explain *infra* this page and 15–17, we are not convinced that Texaco could not have secured judicial relief in those proceedings.

adequate protection'") (quoting *Fenner* v. *Boykin*, 271 U. S. 240, 244 (1926)).

Moreover, denigrations of the procedural protections afforded by Texas law hardly come from Texaco with good grace, as it apparently made no effort under Texas law to secure the relief sought in this case. Cf. *Middlesex County Ethics Comm.* v. *Garden State Bar Assn.*, *supra*, at 435 (rejecting on similar grounds an assertion about the inhospitability of state procedures to federal claims). Article VI of the United States Constitution declares that "the Judges in every State shall be bound" by the Federal Constitution, laws, and treaties. We cannot assume that state judges will interpret ambiguities in state procedural law to bar presentation of federal claims. Cf. *Ohio Civil Rights Comm'n* v. *Dayton Christian Schools, Inc.*, 477 U. S. 619, 629 (1986) (assuming that a state administrative commission would "construe its own statutory mandate in the light of federal constitutional principles"). Accordingly, when a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary.

The "open courts" provision of the Texas Constitution, Article I, § 13, see nn. 10, 11, *supra*, has considerable relevance here. This provision has appeared in each of Texas' six Constitutions, dating back to the Constitution of the Republic of Texas in 1836. See *LeCroy* v. *Hanlon*, 713 S. W. 2d 335, 339, and n. 4 (Tex. 1986). According to the Texas Supreme Court, the provision "guarantees all litigants . . . the right to their day in court." *Id.*, at 341. "The common thread of [the Texas Supreme Court's] decisions construing the open courts provision is that the legislature has no power to make a remedy by due course of law contingent on an impossible condition." *Nelson* v. *Krusen*, 678 S. W. 2d 918, 921 (Tex. 1984). In light of this demonstrable and long-standing commitment of the Texas Supreme Court to provide

access to the state courts, we are reluctant to conclude that Texas courts would have construed state procedural rules to deny Texaco an effective opportunity to raise its constitutional claims.

Against this background, Texaco's submission that the Texas courts were incapable of hearing its constitutional claims is plainly insufficient. Both of the courts below found that the Texas trial court had the power to consider constitutional challenges to the enforcement provisions.[14] The Texas Attorney General filed a brief in the proceedings below, arguing that such relief was available in the Texas courts. See Brief for Intervenor-Appellant in Nos. 86–7046, 86–7052 (CA2), pp. 32–33. Texaco has cited no statute or case clearly indicating that Texas courts lack such power.[15] Accordingly, Texaco has failed to meet its burden on this point.[16]

---

[14] See 784 F. 2d, at 1139; App. to Juris. Statement A104 (District Court's Supplemental Finding of Fact 94).

[15] Texaco relies on the language of Texas Rule of Civil Procedure 364, that lists no exceptions to the requirement that an appellant file a bond to suspend execution of a money judgment pending appeal. Texaco also relies on cases noting that Rule 364 requires appellants to post bond in the full amount of the judgment. *E. g., Kennesaw Life & Accident Insurance Co.* v. *Streetman,* 644 S. W. 2d 915, 916–917 (Tex. App. 1983) (writ refused n.r.e.). But these cases do not involve claims that the requirements of Rule 364 violate other statutes or the Federal Constitution. Thus, they have "absolutely nothing to say with respect to" Texaco's claims that Rule 364 violates the Federal Constitution. See *Huffman* v. *Pursue, Ltd.,* 420 U. S. 592, 610 (1975).

Also, the language of Rule 364 suggests that a trial court could suspend the bond requirement if it concluded that application of the bond requirement would violate the Federal Constitution. Rule 364(a) provides: "*Unless otherwise provided by law* or these rules, an appellant may suspend the execution of the judgment by a good and sufficient bond" (emphasis added). Texaco has failed to demonstrate that Texas courts would not construe the phrase "otherwise provided by law" to encompass claims made under the Federal Constitution. We cannot assume that Texas courts would refuse to construe the Rule, or to apply their inherent powers, to provide a forum to adjudicate substantial federal constitutional claims.

[16] We recognize that the trial court no longer has jurisdiction over the case. See Tex. Rule Civ. Proc. 329b(e); n. 5, *supra.* Thus, relief is no

In sum, the lower courts should have deferred on principles of comity to the pending state proceedings. They erred in accepting Texaco's assertions as to the inadequacies of Texas procedure to provide effective relief. It is true that this case presents an unusual fact situation, never before addressed by the Texas courts, and that Texaco urgently desired prompt relief. But we cannot say that those courts, when this suit was filed, would have been any less inclined than a federal court to address and decide the federal constitutional claims. Because Texaco apparently did not give the Texas courts an opportunity to adjudicate its constitutional claims, and because Texaco cannot demonstrate that the Texas courts were not then open to adjudicate its claims, there is no basis for concluding that the Texas law and procedures were so deficient that *Younger* abstention is inappropriate. Accordingly, we conclude that the District Court should have abstained.

## III

In this opinion, we have addressed the situation that existed on the morning of December 10, 1985, when this case was filed in the United States District Court for the Southern District of New York. We recognize that much has transpired in the Texas courts since then. Later that day, the Texas trial court entered judgment. See n. 5, *supra*. On February 12 of this year, the Texas Court of Appeals substantially affirmed the judgment. See *ibid*. We are not unmindful of the unique importance to Texaco of having its challenges to that judgment authoritatively considered and resolved. We of course express no opinion on the merits of

---

longer available to Texaco from the trial court. But Texaco cannot escape *Younger* abstention by failing to assert its state remedies in a timely manner. See *Huffman* v. *Pursue, Ltd., supra*, at 607–609. In any event, the Texas Supreme Court and the Texas Court of Appeals arguably have the authority to suspend the supersedeas requirement to protect their appellate jurisdiction. See *Pace* v. *McEwen*, 604 S. W. 2d 231, 233 (Tex. Civ. App. 1980) (no writ) (suggesting that a Texas Court of Appeals has such authority).

those challenges. Similarly, we express no opinion on the claims Texaco has raised in this case against the Texas bond and lien provisions, nor on the possibility that Texaco now could raise these claims in the Texas courts, see n. 16, *supra.* Today we decide only that it was inappropriate for the District Court to entertain these claims. If, and when, the Texas courts render a final decision on any federal issue presented by this litigation, review may be sought in this Court in the customary manner.

## IV

The judgment of the Court of Appeals is reversed. The case is remanded to the District Court with instructions to vacate its order and dismiss the complaint. The judgment of this Court shall issue forthwith.

*It is so ordered.*

JUSTICE SCALIA, with whom JUSTICE O'CONNOR joins, concurring.

I join the opinion of the Court. I write separately only to indicate that I do not believe that the so-called *Rooker-Feldman* doctrine deprives the Court of jurisdiction to decide Texaco's challenge to the constitutionality of the Texas stay and lien provisions. In resolving that challenge, the Court need not decide any issue either actually litigated in the Texas courts or inextricably intertwined with issues so litigated. Under these circumstances, I see no jurisdictional bar to the Court's decision in this case.

JUSTICE BRENNAN, with whom JUSTICE MARSHALL joins, concurring in the judgment.

Texaco's claim that the Texas bond and lien provisions violate the Fourteenth Amendment is without merit. While Texaco cannot, consistent with due process and equal protection, be arbitrarily denied the right to a meaningful opportunity to be heard on appeal, this right can be adequately vindicated even if Texaco were forced to file for bankruptcy.

I believe that the Court should have confronted the merits of this case. I wholeheartedly concur with JUSTICE STEVENS' conclusion that a creditor's invocation of a State's postjudgment collection procedures constitutes action under color of state law within the meaning of 42 U. S. C. § 1983. *Post*, at 30, n. 1.

I also agree with his conclusion that the District Court was not required to abstain under the principles enunciated in *Younger* v. *Harris*, 401 U. S. 37 (1971). *Post*, at 30, n. 2. I adhere to my view that *Younger* is, in general, inapplicable to civil proceedings, especially when a plaintiff brings a § 1983 action alleging violation of federal constitutional rights. See *Huffman* v. *Pursue, Ltd.*, 420 U. S. 592, 613 (1975) (BRENNAN, J., dissenting) (*Younger* held "that federal courts should not interfere with pending state *criminal* proceedings, except under extraordinary circumstances" (emphasis in original)); *Juidice* v. *Vail*, 430 U. S. 327, 342 (1977) (BRENNAN, J., dissenting) ("In congressional contemplation, the pendency of state civil proceedings was to be wholly irrelevant. 'The very purpose of § 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights'") (quoting *Mitchum* v. *Foster*, 407 U. S. 225, 242 (1972)).

The State's interest in this case is negligible. The State of Texas—not a party in this appeal—expressly represented to the Court of Appeals that it "has no interest in the outcome of the state-court adjudication underlying this cause," except in its fair adjudication. 784 F. 2d 1133, 1150 (CA2 1986); Brief for Intervenor-Appellant in Nos. 86–7046, 86–7052, p. 2. The Court identifies the State's interest as enforcing "'the authority of the judicial system, so that its orders and judgments are not rendered nugatory.'" *Ante*, at 13 (quoting *Juidice* v. *Vail, supra*, at 336, n. 12). Yet, the District Court found that "Pennzoil has publicly admitted that Texaco's assets are sufficient to satisfy the Judgment even without liens or a bond." App. to Juris. Statement A116

(supplemental findings of fact by District Court). "Thus Pennzoil's interest in protecting the full amount of its judgment during the appellate process is reasonably secured by the substantial excess of Texaco's net worth over the amount of Pennzoil's judgment." 784 F. 2d, at 1155.

Indeed, the interest in enforcing the bond and lien requirement is privately held by Pennzoil, not by the State of Texas. The Court of Appeals correctly stated that this "is a suit between two private parties stemming from the defendant's alleged tortious interference with the plaintiff's contract with a third private party." 784 F. 2d, at 1150. Pennzoil was free to waive the bond and lien requirements under Texas law, without asking the State of Texas for permission. See *Yandell* v. *Tarrant State Bank*, 538 S. W. 2d 684, 687 (Tex. Civ. App. 1976); *United Benefit Fire Insurance Co.* v. *Metropolitan Plumbing Co.*, 363 S. W. 2d 843, 847 (Tex. Civ. App. 1962). "Since Texas law directs state officials to do Pennzoil's bidding in executing the judgment, it is the decision of Pennzoil, not that of the state judiciary, to utilize state agents to undertake the collection process, and the state officials can act only upon Pennzoil's unilateral determination." 784 F. 2d, at 1147. The State's decision to grant private parties unilateral power to invoke, or not invoke, the State's bond and lien provisions demonstrates that the State has no independent interest in the enforcement of those provisions.

Texaco filed this § 1983 suit claiming only violations of *federal* statutory and constitutional law. In enacting § 1983, Congress "created a specific and unique remedy, enforceable in a federal court of equity, that could be frustrated if the federal court were not empowered to enjoin a state court proceeding." *Mitchum* v. *Foster*, *supra*, at 237. Today the Court holds that this § 1983 suit should be filed instead in Texas courts, offering to Texaco the unsolicited advice to bring its claims under the "open courts" provision of the Texas Constitution. This "'blind deference to "States' Rights"'" hardly shows "'sensitivity to the legitimate inter-

ests of *both* State *and National* Governments.'" *Ante,* at 10 (quoting *Younger* v. *Harris, supra,* at 44) (emphasis added).*

Furthermore, I reject Pennzoil's contention that *District of Columbia Court of Appeals* v. *Feldman,* 460 U. S. 462 (1983), and *Rooker* v. *Fidelity Trust Co.,* 263 U. S. 413 (1923), forbid collateral review in this instance. In *Rooker* and *Feldman,* the Court held that lower federal courts lack jurisdiction to engage in appellate review of state-court determinations. In this case, however, Texaco filed the § 1983 action only to protect its federal constitutional right to a meaningful opportunity for appellate review, not to challenge the merits of the Texas suit. Texaco's federal action seeking a stay of judgment pending appeal is therefore an action " 'separable from and collateral to' " the merits of the state-court judgment. *National Socialist Party* v. *Skokie,* 432 U. S. 43, 44 (1977) (quoting *Cohen* v. *Beneficial Loan Corp.* 337 U. S. 541, 546 (1949)).

---

*Although the Court's opinion is based on a rather diffuse rationale, I read the opinion as narrowly limited by the unique factual circumstances of the case. The Court is responding to "an unusual fact situation, never before addressed by the Texas courts," *ante,* at 17, or by this Court. The Court bases its holding on several interdependent considerations. First, the Court acknowledges that today's extension of the *Younger* doctrine applies only "when certain civil proceedings are pending, if the State's interests in the proceeding are so important that exercise of the federal judicial power would disregard the comity between the States and the National Government." *Ante,* at 11. Second, the Court emphasizes that in this instance "it is impossible to be certain that the governing Texas statutes and procedural rules actually raise [Texaco's] claims," and that the Texas Constitution contains an "open courts" provision "that appears to address Texaco's claims more specifically" than the Federal Constitution. *Ante,* at 11–12. Third, the Court heavily relies on the State's particular interest in enforcing bond and lien requirements to prevent state-court judgments, which have been already pronounced, from being rendered "nugatory." *Ante,* at 13. The unique and extraordinary circumstances of this case should limit its influence in determining the outer limits of the *Younger* doctrine.

22

While I agree with Justice Stevens that Texaco's claim is "plainly without merit," *post,* at 29, my reasons for so concluding are different. Since Texas has created an appeal as of right from the trial court's judgment, it cannot infringe on this right to appeal in a manner inconsistent with due process or equal protection. See *Evitts* v. *Lucey,* 469 U. S. 387, 393 (1985). While "a cost requirement, valid on its face, may offend due process because it operates to foreclose a particular party's opportunity to be heard," *Boddie* v. *Connecticut,* 401 U. S. 371, 380 (1971), in this case, Texaco clearly could exercise its right to appeal in order to protect its corporate interests even if it were forced to file for bankruptcy under Chapter 11. 11 U. S. C. § 362. Texaco, or its successor in interest, could go forward with the appeal, and if it did prevail on its appeal in Texas courts, the bankruptcy proceedings could be terminated. § 1112. Texaco simply fails to show how the initiation of corporate reorganization activities would prevent it from obtaining meaningful appellate review.

I reach this conclusion on the narrow facts before us. Thus, this case is different from the more troublesome situation where a particular corporate litigant has such special attributes as an organization that a trustee in bankruptcy, in its stead, could not effectively advance the organization's interests on an appeal. Moreover, the underlying issues in this case—arising out of a commercial contract dispute—do not involve fundamental constitutional rights. See, *e. g., Henry* v. *First National Bank of Clarksdale,* 595 F. 2d 291, 299–300 (CA5 1979) (bankruptcy of NAACP would make state appellate review of First Amendment claims "so difficult" to obtain that federal injunction justified), cert. denied *sub nom. Claiborne Hardware Co.* v. *Henry,* 444 U. S. 1074 (1980).

Given the particular facts of this case, I would reverse the judgment of the Court of Appeals and remand the case with instructions to dismiss the complaint.

JUSTICE MARSHALL, concurring in the judgment.

While I join in the Court's disposition of this case, I cannot join in its reasoning. The Court addresses the propriety of abstention under the doctrine of *Younger* v. *Harris*, 401 U. S. 37 (1971). There is no occasion to decide if abstention would have been proper unless the District Court had jurisdiction. Were I to reach the merits I would reverse for the reasons stated in the concurring opinions of JUSTICES BRENNAN and STEVENS, in which I join. But I can find no basis for the District Court's unwarranted assumption of jurisdiction over the subject matter of this lawsuit, and upon that ground alone I would reverse the decision below.

Appellee Texaco, a Delaware corporation with its principal place of business in New York, was sued in the Texas state courts by appellant Pennzoil, a Delaware corporation with its principal place of business in Texas. Because there was no diversity of citizenship, Texaco could not remove Pennzoil's action to Federal District Court, and the action was tried in the state court. After the adverse jury verdict, Texaco filed a complaint in the United States District Court for the Southern District of New York seeking to enjoin the execution of the Texas judgment, which was not yet final at the time the federal complaint was filed. Texaco filed its federal action without seeking relief from the bonding requirement in any Texas court. The Federal District Court in which Texaco filed sits in another State, more than halfway across the country from the locale in which the case was tried, in which the appeal would take place, and in which the judgment would be executed. Even if Texaco had possessed the power of removal on diversity grounds, it still would not have been entitled to proceed in the forum to which it brought its request for post-trial relief.

Counsel for Texaco suggested at oral argument that venue was proper in the Southern District of New York because Texaco's corporate headquarters is located in that District, and it was there that a Chapter 11 petition would be filed

should Texaco decide to take that step as a result of the adverse Texas judgment. Tr. of Oral Arg. 28, 29–30. Venue in actions not solely predicated upon diversity of citizenship is governed by 28 U. S. C. § 1391(b), which provides that venue is proper "only in the judicial district where all defendants reside, or in which the claim arose, except as otherwise provided by law." As we have said, "it is absolutely clear that Congress did not intend to provide for venue at the residence of the plaintiff or to give that party an unfettered choice among a host of different districts." *Leroy* v. *Great Western United Corp.*, 443 U. S. 173, 185 (1979). Texaco has offered no authority in support of its novel proposition that the situs of plaintiff's potential Chapter 11 petition is a factor to be considered in the determination of venue in a federal civil rights action.

The District Court found that venue was proper in the Southern District of New York on the ground that "[t]he claims arose in this District." 626 F. Supp. 250, 252 (1986). The District Court did not explain how Texaco's claims, which challenged a Texas state-law bonding provision limiting Texaco's opportunity to stay execution of a Texas judgment against property located in Texas, could be said to arise in the Southern District of New York. Pennzoil's failure to move to dismiss for lack of venue, and to contest the District Court's venue determination in the Court of Appeals, precludes any disposition on that ground here, but the clear absence of venue in the District Court further strengthens the odor of impermissible forum shopping which pervades this case.

But no matter in which federal court Texaco's complaint was filed, jurisdiction to hear the case would have been lacking. It is a well-settled principle that federal appellate review of judgments rendered by state courts can only occur in this Court, on appeal or by writ of certiorari. See *District of Columbia Court of Appeals* v. *Feldman*, 460 U. S. 462, 482 (1983); *Rooker* v. *Fidelity Trust Co.*, 263 U. S. 413, 416

(1923); see also *Atlantic Coast Line R. Co.* v. *Locomotive Engineers*, 398 U. S. 281, 296 (1970). Both the Court of Appeals and appellee here recognize the relevance of this rule. See 784 F. 2d 1133, 1141–1142 (CA2 1986); Brief for Appellee 44. It is said, however, that this principle applies only to review of the substance of state judgments, and that the federal action now before us involved solely a constitutional challenge to procedures for enforcement of the state judgment, totally apart from the merits of the state-court action itself. *Id.*, at 45–46; 784 F. 2d, at 1144–1145. In the circumstances of the present case I find this asserted distinction completely unconvincing.

As we have said, "[i]f the constitutional claims presented to a United States district court are inextricably intertwined" with the merits of a judgment rendered in state court, "then the district court is in essence being called upon to review the state-court decision. This the district court may not do." *District of Columbia Court of Appeals* v. *Feldman, supra*, at 483–484, n. 16. While the question whether a federal constitutional challenge is inextricably intertwined with the merits of a state-court judgment may sometimes be difficult to answer, it is apparent, as a first step, that the federal claim is inextricably intertwined with the state-court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it. Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment.

The opinions of the District Court and the Court of Appeals in this case illustrate this problem. As the Court of Appeals noted, "[m]any of the judge's conclusions [in the District Court] with respect to the merits of the Texas action, despite his lip-service disclaimer, constitute what amounts to an impermissible appellate review of issues that have already been adjudicated by the Texas trial court." 784 F. 2d, at 1143.

In determining whether Texaco had alleged the prospect of irreparable harm sufficient to support the issuance of an injunction, the Court of Appeals, in turn, found itself addressing the merits of Texaco's appeal in the Texas state courts:

> "Only if Texaco's appeal were patently frivolous would we be justified in holding that any threatened harm to it from effective denial of its right of appeal could be labelled inconsequential. The issue before us, therefore, is not whether Texaco should have prevailed on the merits in the Texas action but whether its Texas appeal presents non-frivolous issues for resolution." *Id.*, at 1153.

But the courts below, by asking whether Texaco was frivolous in asserting that the trial court erred or whether Texaco should have prevailed in the Texas trial court, undertook a review of the merits of judgments rendered by a state court. As the Court of Appeals recognized, the issuance of an injunction depended upon the finding that Texaco had significant claims to assert in its state-court appeal. Because determination of Texaco's claim for an injunction *necessarily* involved some review of the merits of its state appeal, Texaco's constitutional claims were inextricably intertwined with the merits of the Texas judgment, and thus the District Court lacked jurisdiction over Texaco's complaint in the first instance.

As Justice Holmes observed: "Great cases like hard cases make bad law. For great cases are called great, not by reason of their real importance in shaping the law of the future, but because of some accident of immediate overwhelming interest which appeals to the feelings and distorts the judgment." *Northern Securities Co.* v. *United States*, 193 U. S. 197, 400 (1904) (dissenting opinion). The history of this lawsuit demonstrates that great sums of money, like great cases, make bad law. Because a wealthy business corporation has been ordered to pay damages in an amount hitherto unprecedented, and finds its continued survival in doubt, we and the

courts below have been presented with arguments of great sophistication and complexity, all concerned with a case which under clearly applicable principles should never have been in the federal courts at all. The Court's opinion, which addresses in sweeping terms one of these questions, is the result of what Justice Holmes called "a kind of hydraulic pressure which makes what previously was clear seem doubtful, and before which even well settled principles of law will bend." *Id.*, at 401.

Had the sole proprietor of a small Texas grocery sued in the Southern District of New York to enjoin the enforcement of the Texas bonding provision in order to facilitate appeal in Texas from a state-court judgment in the amount of $10,000, the result below would surely have been different, even if inability to meet the bonding requirement and to stay execution of judgment meant dissolution of the business and displacement of employees. The principles which would have governed with $10,000 at stake should also govern when thousands have become billions. That is the essence of equal justice under law. I concur in the judgment of the Court.

JUSTICE BLACKMUN, concurring in the judgment.

I, too, conclude, as do JUSTICE BRENNAN and JUSTICE STEVENS, that a creditor's invocation of a State's post-judgment collection procedures constitutes action under color of state law within the reach of 42 U. S. C. § 1983. See *Lugar* v. *Edmondson Oil Co.*, 457 U. S. 922 (1982), where I joined the majority opinion. I also agree with them that the District Court was correct in not abstaining under the principles enunciated in *Younger* v. *Harris*, 401 U. S. 37 (1971). See *ante*, at 19–21 and n. (BRENNAN, J., concurring in judgment); *post*, at 30, n. 2 (STEVENS, J., concurring in judgment). In my view, to rule otherwise would expand the *Younger* doctrine to an unprecedented extent and would effectively allow the invocation of *Younger* abstention whenever any state proceeding is ongoing, no matter how attenuated the State's interests are in that proceeding and no

matter what abuses the federal plaintiff might be sustaining. See *Trainor* v. *Hernandez*, 431 U. S. 434, 448 (1977) (concurring opinion). In addition, for the reasons given by JUSTICE BRENNAN, see *ante*, at 21 (concurring in judgment), I believe that federal collateral review is not barred by the principles announced in *District of Columbia Court of Appeals* v. *Feldman*, 460 U. S. 462 (1983), and *Rooker* v. *Fidelity Trust Co.*, 263 U. S. 413 (1923).

I, however, refrain from joining the opinion of either JUSTICE BRENNAN or JUSTICE STEVENS when they would hold, as JUSTICE STEVENS does, that no due process violation in this context is possible or, as JUSTICE BRENNAN does, that room must be left for some constitutional violations in post-judgment procedures, but only when the organization seeking the appeal has "special attributes as an organization" or when the underlying dispute involves "fundamental constitutional rights." *Ante*, at 22 (BRENNAN, J., concurring in judgment). Those conclusions, I fear, suffer somewhat from contortions due to attempts to show that a due process violation *in this case* is not possible or is hardly possible.* Thus, I would not disturb the Court of Appeals' conclusion that Texaco's due process claim raised a "fair groun[d] for litigation" because "an inflexible requirement for impressment of a lien and denial of a stay of execution unless a supersedeas bond in the full amount of the judgment is posted can in some circumstances be irrational, unnecessary, and self-defeating,

---

*In particular, the suggestion that Texaco could enter a Chapter 11 proceeding, pursue its appeal, and then reemerge from this proceeding to continue "business as usual" strikes me as somewhat at odds with the reality of the corporate reorganization that might occur in bankruptcy, especially on the facts of this case. Moreover, while there has been some discussion about a "special law" for multibillion-dollar corporations, I would have thought that our proper concern is with constitutional violations, not with our sympathy, or lack thereof, for a particular litigant. It might also be useful to point out an obvious, but overlooked, fact: Pennzoil, too, is not a corner grocery store.

amounting to a confiscation of the judgment debtor's property without due process." 784 F. 2d 1133, 1154 (CA2 1986).

I conclude instead that this case presents an example of the "narrowly limited 'special circumstances,'" *Zwickler* v. *Koota*, 389 U. S. 241, 248 (1967), quoting *Propper* v. *Clark*, 337 U. S. 472, 492 (1949), where the District Court should have abstained under the principles announced in *Railroad Comm'n of Texas* v. *Pullman Co.*, 312 U. S. 496 (1941). Although the *Pullman* issue was not pressed before us (but see Brief for Appellant 42–43), it was considered by the Court of Appeals and rejected. 784 F. 2d, at 1148–1149. In particular, the court determined that "there [was] nothing unclear or uncertain about the Texas lien and bond provisions" and that abstention was not demanded when there was only a "mere possibility" that the Texas courts would find such provisions unconstitutional. *Ibid.* I disagree. If the extensive briefing by the parties on the numerous Texas statutes and constitutional provisions at issue here suggests anything, see Brief for Appellant 23–32 and accompanying notes; Brief for Appellee 32–44 and accompanying notes; Reply Brief for Appellant 3–11 and accompanying notes, it is that on the unique facts of *this* case "unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided," *Hawaii Housing Authority* v. *Midkiff*, 467 U. S. 229, 236 (1984), because "the state courts may interpret [the] challenged state statute[s] so as to eliminate, or at least to alter materially, the constitutional question presented." *Ohio Bureau of Employment Services* v. *Hodory*, 431 U. S. 471, 477 (1977); see also *ante*, at 11–12, and n. 11. The possibility of such a state-law resolution of this dispute seems to me still to exist.

JUSTICE STEVENS, with whom JUSTICE MARSHALL joins, concurring in the judgment.

In my opinion Texaco's claim that the Texas judgment lien and supersedeas bond provisions violate the Fourteenth Amendment is plainly without merit. The injunction against

enforcement of those provisions must therefore be dissolved. I rest my analysis on this ground because I cannot agree with the grounds upon which the Court disposes of the case. In my view the District Court and the Court of Appeals were correct to hold that a creditor's invocation of a State's post-judgment collection procedures constitutes action "under color of" state law within the meaning of 42 U. S. C. § 1983,[1] and that there is no basis for abstention in this case.[2]

---

[1] See *Lugar* v. *Edmondson Oil Co.*, 457 U. S. 922 (1982), and cases cited at 932–933. In *Lugar*, the Court explained that "a private party's joint participation with state officials in the seizure of disputed property is sufficient to characterize that party as a 'state actor' for purposes of the Fourteenth Amendment." *Id.*, at 941. We reached this conclusion based on the rule that a person "may fairly be said to be a state actor . . . because he is a state official, because he acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State." *Id.*, at 937. This reasoning allows no distinction between a litigant's prejudgment and postjudgment involvement.

[2] As the Court of Appeals explained: "The state interests at stake in this proceeding differ in both kind and degree" from the cases in which the Court has held *Younger* abstention appropriate. 784 F. 2d 1133, 1149 (CA2 1986). As JUSTICE BRENNAN's analysis points out, *ante*, at 19–21, the issue whether "proceedings implicate important state interests" is quite distinct from the question whether there is an ongoing proceeding. See *Middlesex County Ethics Comm.* v. *Garden State Bar Assn.*, 457 U. S. 423, 432 (1982). Although we have often wrestled with deciding whether a particular exercise of state enforcement power implicates an "important state interest," see *Younger* v. *Harris*, 401 U. S. 37 (1971) (criminal statute); *Huffman* v. *Pursue, Ltd.*, 420 U. S. 592 (1975) (obscenity regulation); *Juidice* v. *Vail*, 430 U. S. 327 (1977) (contempt proceedings); *Trainor* v. *Hernandez*, 431 U. S. 434 (1977) (welfare fraud action); *Moore* v. *Sims*, 442 U. S. 415 (1979) (child abuse regulation); *Middlesex County Ethics Comm.*, *supra*, (bar disciplinary proceedings); *Ohio Civil Rights Comm.* v. *Dayton Christian Schools, Inc.*, 477 U. S. 619 (1986) (antidiscrimination laws), we have invariably required that the State have a *substantive* interest in the ongoing proceeding, an interest that goes beyond its interest as adjudicator of wholly private disputes. By abandoning this critical limitation, the Court cuts the *Younger* doctrine adrift from its original doctrinal moorings which dealt with the States' interest in enforcing their criminal laws, and the federal courts' longstanding reluctance to interfere with such proceedings. See *Huffman, supra*, at 604.

The Court of Appeals upheld the injunction based on its conclusion that Texaco has a substantial chance of success on the merits of its federal constitutional challenge to the Texas postjudgment procedures. The court properly held[3] (and Texaco does not contest this conclusion) that Texaco's claims arising out of the jury trial itself could not support the injunction, because those claims are appealable only through the Texas courts. See 784 F. 2d 1133, 1143–1145 (CA2 1986). Thus, the injunction must stand or fall on Texaco's argument that the Federal Constitution requires Texas to grant a stay of the judgment pending appeal without requiring a bond.

Pennzoil argues that Texaco's challenge fails because States are under no constitutional duty to provide for civil appeals. Our precedents do tend to support this proposition.[4]

---

[3] For the reasons stated by JUSTICE BRENNAN, *ante*, at 21, and JUSTICE SCALIA, *ante*, at 18, I do not believe that the doctrine described in *District of Columbia Court of Appeals* v. *Feldman*, 460 U. S. 462 (1983), and *Rooker* v. *Fidelity Trust Co.*, 263 U. S. 413 (1923), bars the federal courts from considering Texaco's claims. See generally *Feldman, supra,* at 490 (STEVENS, J., dissenting).

[4] In *Marine Cooks and Stewards* v. *Arnold*, 348 U. S. 37, 42–43 (1954), the Court stated:

"Here the petitioner has had its day in court. The dismissal has cut off only a statutory right of review after a full trial by judge and jury.

.          .          .

"While a statutory review is important and must be exercised without discrimination, such a review is not a requirement of due process. *District of Columbia* v. *Clawans,* 300 U. S. 617, 627; *Ohio* v. *Akron Park District,* 281 U. S. 74, 80; *Reetz* v. *Michigan,* 188 U. S. 505, 508; *McKane* v. *Durston,* 153 U. S. 684, 687–688."

Similarly, the Court has explained:

"An appeal from a judgment of conviction is not a matter of absolute right, independently of constitutional or statutory provisions allowing such appeal. A review by an appellate court of the final judgment in a criminal case, however grave the offense of which the accused is convicted, was not at common law and is not now a necessary element of due process of law. It is wholly within the discretion of the State to allow or not to allow such a review. A citation of authorities upon the point is unnecessary." *McKane* v. *Durston,* 153 U. S. 684, 687 (1894).

See also *Ortwein* v. *Schwab,* 410 U. S. 656, 660 (1973) *(per curiam).*

But it is unnecessary to rely on that broad argument in order to reject Texaco's constitutional attack. Texaco does not claim that the Texas procedures make it *impossible* for it to take an appeal in this case. The Texas rules do not require a bond or security in order to take an appeal; the rules require a bond or security only in order to obtain a stay of the judgment pending appeal. To be sure, neither of Texaco's options under the rules is very attractive. On the one hand, if Texaco does not obtain a stay, Pennzoil can immediately begin executing on its judgment, even while Texaco's appeal is pending. On the other hand, for Texaco to post the security required for a stay would, as the District Court found, seriously impair Texaco's ability to conduct its normal business operations and could even force the corporation into bankruptcy.[5] Neither of these consequences, however, would necessarily prevent Texaco, or its successor in interest—possibly a bankruptcy trustee—from going forward with the appeal.[6] It is certainly wrong to denigrate the seriousness of these effects. But it is similarly wrong to approach this case as one involving an absolute deprivation of the opportunity to appeal.

Thus, the real question is whether Texas is constitutionally required to suspend the execution of money judgments without the posting of a bond or security. The proposition that stays of execution are available as a matter of federal constitutional right was rejected long ago. In *Louisville & Nashville R. Co.* v. *Stewart,* 241 U. S. 261 (1916), Justice Holmes

---

[5] The Court of Appeals stated that Texaco has "a liquidation value of $22 billion and a net worth of about $23 billion." 784 F. 2d, at 1152; see also *id.,* at 1155; Brief for Appellee 6. As the Court points out, the judgment against Texaco, including prejudgment interest, totaled approximately $11 billion. *Ante,* at 4.

[6] Of course, if Texaco were forced to file for bankruptcy under Chapter 11, the claims of judgment creditors would be automatically stayed. See 11 U. S. C. § 362. If Texaco were then to prevail on its appeal from the Texas judgment, the bankruptcy court could dismiss the reorganization proceeding. 11 U. S. C. § 1112.

explained for a unanimous Court that a State is not bound, by reason of providing an appellate process, also "to provide for a suspension of the judgment" during the appeal. *Id.*, at 263. It is clear that the States' strong concern in protecting appellees' right to recover on judgments amply justifies the bond or security requirements that are currently so prevalent across the country.[7]

Texaco nonetheless argues that once Texas has decided to grant stays of executions to some appellants, it cannot deny stays to others on arbitrary grounds. See *Lindsey* v. *Normet*, 405 U. S. 56, 77 (1972) (opportunity for appeal "cannot be granted to some litigants and capriciously or arbitrarily denied to others without violating the Equal Protection Clause"). In this case, Texaco claims that denial of a stay pending a bond or posting of security was arbitrary because (1) it is impossible for it to secure a bond for the amount required by Rule 364 of the Texas Rules of Civil Procedure; (2) posting security under Rule 14c would have a devastating effect on its financial position; and (3) neither a bond nor security is really necessary because Texaco's vast resources provide ample assurance that Pennzoil will be able to collect its judgment in full after the appellate process has run its course. See Brief for Appellee 11.

I agree that it might be wise policy for Texas to grant an exception from the strict application of its rules when an appellant can satisfy these three factors. But the refusal to do so is certainly not arbitrary in the constitutional sense. A provision for such exemptions would require the State to establish rules and to hold individualized hearings whenever relevant allegations are made. Texas surely has a rational

---

[7] See R. Lynn, Appellate Litigation 385 (1985) (collecting provisions on requirements to obtain stay of execution pending appeal). A judgment creditor's interest in the judgment can be adversely affected during the appelate process in a variety of ways. For example, the debtor may purposely dissipate its assets, or subsequent secured creditors may attach the debtor's property.

basis for adopting a consistent rule refusing to stay the execution of money judgments pending appeal, unless a sufficient bond or security is posted.[8]

Admittedly, Texaco makes a sympathetic argument, particularly when it describes the potential adverse impact of this litigation on its employees, its suppliers, and the community at large. But the exceptional magnitude of those consequences is the product of the vast size of Texaco itself—it is described as the fifth largest corporation in the United States—and the immensity of the transaction that gave rise to this unusual litigation. The character of harm that may flow from this litigation is not different from that suffered by other defeated litigants, their families, their employees, and their customers. The price of evenhanded administration of justice is especially high in some cases, but our duty to deal equally with the rich and the poor does not admit of a special exemption for multibillion-dollar corporations or transactions.

·

---

[8] "In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' *Lindsley* v. *Natural Carbonic Gas Co.*, 220 U. S. 61, 78 [(1911)]." *Dandridge* v. *Williams*, 397 U. S. 471, 485 (1970).
Cf. *Johnson* v. *Louisiana*, 406 U. S. 356, 364 (1972) (State acted rationally in attempting to " 'facilitate, expedite, and reduce expense in the administration of criminal justice' " (citation omitted)).