SEYMOUR, Chief Judge,
dissenting:
I am satisfied that the federal district court correctly resolved the merits of Mr. Morrow’s claims under the Indian Child Welfare Act (ICWA), 25 U.S.C. § 1901 et seq., and I would therefore affirm on that basis. For the reasons set out below, I am unable to agree with the majority’s decision to require abstention under Younger. Accordingly, I must dissent.
I do not agree with the majority’s conclusion that the State’s interest here is sufficient to support abstention in the face of the strong federal interest Congress has expressed in the welfare of Indian children. The majority states at page 1397 of its opinion that family relations are a traditional area of state concern, quoting Moore v. Sims, 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979). In Moore, the State was a party, contrary to the situation here. Moreover, and more significantly, Moore did not involve an Indian child, a distinction that I view as critical given the Congressional statements set out in the ICWA. “Because of the unique legal status of Indians in American jurisprudence, legal doctrines often must be viewed from a different perspective from that which would obtain in other areas of the law.” Native Village of Venetie I.R.A. Council v. Alaska, 944 F.2d 548, 553 (9th Cir.1991).
I do not believe we can assign the State’s interest in providing a forum for determining the custody of an Indian child the requisite weight for abstention purposes in light of the Congressional finding in the ICWA that “the States, exercising their recognized jurisdiction over Indian child custody proceedings through administrative and judicial bodies, have often failed to recognize the essential tribal relations of Indian people and the cultural and social standards prevailing in Indian communities and families.” 25 U.S.C. § 1901(5). To remedy this failing by the States, Congress declared:
“It is the policy of this Nation to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture. ”
Id. § 1902. Congress has thus imposed Federal standards on custody disputes involving Indian children which override an otherwise traditional area of state concern precisely because the States have not been sensitive to the unique circumstances arising when the custody of Indian children is involved. In my judgment, these Congressional pronouncements clearly indicate that the federal interest is paramount here, and I therefore cannot agree that the State’s interest is sufficient to support a decision to abstain.
*1399 Because the whole purpose of the ICWA is to set out these standards and impose them on the States as a matter of federal law, I must also disagree with the majority’s statements at page 1395 that Congress did not intend section 1914 of the ICWA to allow a federal suit challenging the legality of an ongoing state custody determination of an Indian child. The majority cites no authority for that proposition and it is, of course, directly contrary to the canon of construction that “[sjtatutes are to be construed liberally in favor of the Indians, with ambiguous provisions interpreted to their benefit.” Montana v. Blackfeet Tribe of Indians, 471 U.S. 759, 766, 105 S.Ct. 2399, 2403, 85 L.Ed.2d 753 (1985); see also Native Village of Venetie, 944 F.2d at 548. Section 1914 authorizes any competent court to invalidate the custody placement of an “Indian child who is the subject of any action for foster care placement or termination of parental rights under State law” when the action violates enumerated provisions of the ICWA. Removing an Indian child from the custody of a parent or Indian custodian frequently occurs during such proceedings and long before a final disposition of the case is made. Nothing in the language of the statute or its legislative history provides any support for the majority’s conclusion that this removal cannot be challenged until a final order in the underlying action is entered. Indeed, the plain intent of the statute appears to me to be to the contrary. As the Supreme Court has pointed out, allowing an expeditious determination of whether the required Federal standards have been followed will avoid much potential anguish. See Mississippi Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 53-54, 109 S.Ct. 1597, 1611, 104 L.Ed.2d 29 (1989). Moreover, given our holding in Kiowa Tribe of Okla. v. Lewis, 777 F.2d 587, 590-92 (10th Cir.1985), cert. denied, 479 U.S. 872, 107 S.Ct. 247, 93 L.Ed.2d 171 (1986), that section 1914 may not be used to challenge the legality of a state custody determination after a final decision has been made in the state courts, the majority’s proposal to require abstention until that final decision has been made will in essence strip section 1914 of any meaningful application whatsoever.
Abstention is only warranted in civil proceedings when “the State’s interests in the proceedings are so important that exercise of the federal judicial power would disregard the comity between the States and the National Government.” Pennzoil Co. v. Texaco, Inc. 481 U.S. 1, 11, 107 S.Ct. 1519, 1526, 95 L.Ed.2d 1 (1987). Here, Congress has found that States have often failed to recognize federal concerns when conducting the civil proceedings at issue. Congress has therefore mandated Federal standards for use in such proceedings. Congress has further provided an enforcement mechanism through section 1914 to ensure that the State proceedings comply with these Federal standards. Given the clear Congressional statements that federal concerns are paramount in these proceedings, we are not at liberty to hold otherwise.
I would affirm on the basis of the district court’s correct resolution of the merits.