**CITIBANK, N.A., Plaintiff,**

v.

**NYLAND (CF8) LTD., et al.,
Defendants.**

**No. 86 Civ. 9181 (WK).**

United States District Court,
S.D. New York.

Feb. 15, 1989.

See also, 692 F.Supp. 1488.

Robert M. Abrahams, Alan R. Glickman, Schulte, Roth & Zabel, New York City, for plaintiff Citibank, N.A.

Robert S. Smith, Peter Mason, Paul, Weiss, Rifkind, Wharton & Garrison, Andrew J. Levander, Shereff, Friedman, Hoffman & Goodman, New York City, for defendant Nyland (CF8) Ltd.

Jeffrey J. Greenbaum, James Hirschorn, Sills, Cummis, Zuckerman, Radin, Tischman, Epstein & Gross, New York City, for defendant Republic of Philippines.

Perry S. Galler, Joseph C. Savino, Phillips, Nizer, Benjamin, Krim & Ballon, New York City, for defendant New York Land Co.

Charles C. Parlin, Elsie A. Crum, Shearman & Sterling, New York City, for receiver Cushman & Wakefield.

Benito Romano, U.S. Atty., S.D.N.Y., Thomas A. Zaccaro, Asst. U.S. Atty., for U.S.

WHITMAN KNAPP, District Judge.

On December 23, 1988, we entered judgment of foreclosure and sale in favor of plaintiff Citibank, directing that the mortgaged leasehold interest in 40 Wall Street be sold, and that the surplus proceeds of the sale be transferred to the court overseeing *Republic of Philippines v. Marcos*, 86 Civ. 2294 (PNL), a companion action pending in this district in which the Republic of the Philippines seeks to impress this and several other properties with a constructive trust, on the ground that they were purchased with monies unlawfully purloined from the Philippines by former President Ferdinand Marcos. The property in foreclosure is also the subject of restraining orders entered in *United States v. Marcos, et al.*, SSS 88 Cr. 598 (JFK), a criminal proceeding also pending in this district, in which the United States alleges that the property is subject to forfeiture.

Defendant Nyland (CF8) Ltd., the ground lessee and the named mortgagor, now moves (in its dual personae Nyland (PW) and Nyland (SF))[1] for a stay of the judgment of foreclosure and sale, asking that we waive the requirement of posting a supersedeas bond. The motion is denied.

As an initial matter, there has not been an adequate showing of inability to post a supersedeas bond. We accept as true the assertion that Nyland (CF8) Ltd. itself, being a shell corporation whose sole asset is in receivership, is unable to post a bond. We cannot, however, simply assume that the real parties in interest, namely, those who throughout this litigation have claimed to own and/or speak for Nyland, are similarly without the means to post a bond. Neither of these factions has come forward with any proof of such inability.

Even if we were to ignore the failure of both Nyland (PW) and Nyland (SF) to make this threshold showing of inability, we would still hold that they have shown neither the " 'irreparable injury' ... [n]or the 'unusual circumstances' ... required under federal law for the granting of a stay upon the posting of a bond in less than the full amount of the judgment." *Matthews v.*

*CTI Container Transport International Inc.* (S.D.N.Y.1988) 689 F.Supp. 348, 350 (*quoting Texaco Inc. v. Pennzoil Co.* (2nd Cir.1986) 784 F.2d 1133, 1154–55, *rev'd on other grounds* (1987) 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (citations omitted)).

On the issue of "irreparable injury," much of the discussion has revolved around Nyland's assertion of a right under New York CPLR § 5523 to obtain "restitution" of the property after a successful appeal, notwithstanding an intervening judicial sale to a third party.[2] Nyland argues that the risk of such an order of restitution, in the form of rescission of the foreclosure sale, will depress the price bid at such a sale and thereby reduce the surplus available to Nyland (or to the other equity claimants) if the judgment of foreclosure is ultimately upheld. Alternatively, Nyland argues that it will suffer irreparable injury if it *cannot* obtain rescission of the foreclosure sale under § 5523 after a successful appeal.

The opponents of a stay have argued, in our view persuasively, that a good faith purchaser for value at a foreclosure sale would not risk loss of title following a successful appeal by Nyland.[3] Assuming such success on appeal, § 5523 provides a

1. Defendant Nyland (CF8) Ltd. continues to be represented in this action by two firms, each appearing on behalf of rival factions claiming to speak for the corporation. The so called "Bernstein" faction is represented by Paul Weiss Rifkind Wharton & Garrison ("Nyland (PW)"), and the so-called "Peterson/Kashoggi" faction is represented by Shereff Friedman Hoffman & Goodman ("Nyland (SF)"). The two firms take identical positions on the instant application.

2. New York CPLR § 5523 (McKinney's 1978) provides:

A court reversing or modifying a final judgment or order or affirming such a reversal or modification may order restitution of property or rights lost by the judgment or order, except that where the title of a purchaser in good faith and for value would be affected, the court may order the value or the purchase price restored or deposited in court.

3. In its reply papers, Nyland has made much of the fact that the cases cited by its opponents for this proposition, *see, e.g., Revelone Inc. v. Arlind Realty Corp.* (1st Dep't 1949) 274 A.D. 656, 663, 87 N.Y.S.2d 52, 59, *aff'd* (1949) 299 N.Y. 667, 87 N.E.2d 60, were decided under an earlier version of the statute, New York Civil Practice Act § 587. That section provided:

When a final judgment is reversed ... upon appeal, the appellate court ... make make or compel restitution of property, or of a right, lost by means of the erroneous judgment or order; but not so as to affect the title of a purchaser in good faith and for value. When property has been sold, the court may compel the value of the purchase price to be restored or deposited to abide the event of the action, as just requires.

Nyland argues that under the statute in its current incarnation the court has discretion to order "restitution of property" despite prior transfer of title to a good faith purchaser for value. We do not read CPLR § 5523 as vesting us with any greater quantum of discretion than CPA § 587, and view the precedents decided under that earlier statute as good law. It is clear both from the language of § 5523 as well as from its legislative history, *see* N.Y. CPLR § 5523 note on legislative studies and reports (McKinney's 1978), that in amending the statute to clarify the powers of successive reviewing courts, the drafters availed themselves of the opportunity to strive for that most noble of all drafting goals: to say the same thing with fewer words.

**190**

mechanism for making Nyland whole through the restoration to it of the "value or purchase price" of the property. Any incidental negative economic consequences of such a legal remedy do not rise to the level of "irreparable harm" warranting a waiver of the bond requirement.

Turning to the requirement of "unusual circumstances," if anything such "circumstances" as may be at work in this action militate against, not in favor, of a stay. Were this an ordinary mortgage foreclosure, the security provided to Citibank by the mortgaged property itself would probably justify waiving a requirement that the mortgagor, Nyland, post a bond pending appeal. But in this action there are other claimants to the equity, namely, the Republic of Philippines and the United States of America, who never enjoyed the benefit of the underlying loan proceeds and whose only hope of recovery lies in the surplus proceeds of a foreclosure sale. They each have an interest in avoiding further erosion of the potential surplus through the further accrual of interest on Citibank's judgment, through further charges for receiver's and attorney's fees, etc., and through further economic deterioration of the property caused by the inherent uncertainty in the current state of affairs. Having weighed such erosion of the surplus against the possibility of depression of the sale price due to the pendency of the appeal, they both oppose a stay of the foreclosure sale. Notwithstanding Nyland's attempts to impugn and demean their judgment in this regard, we must respect their view that a stay would be contrary to their interests. Having determined that Nyland can be made whole in the event of a successful appeal, the balance of the remaining equities is such that the application for a stay of the foreclosure sale should be denied.

SO ORDERED.