Victor J. ROBLES–PASTRANA, et
al., Plaintiffs,

v.

Hector CRESPO MILIAN, et
al., Defendants.

Civ. No. 90–1061(JP).

United States District Court,
D. Puerto Rico.

Jan. 15, 1990.

Carlos V. García Gutiérrez, Harry Anduze Montaño, Guillermo J. Ramos Luiña, Rafael Rodríguez Rivera, and Nelson Pérez Domínguez, San Juan, P.R., for plaintiffs.

Jorge E. Pérez Díaz, Sol. Gen., Dept. of Justice, San Juan, P.R., for defendants.

OPINION AND ORDER

PIERAS, District Judge.

This case is before the Court on plaintiffs' Motion Requesting a Temporary Restraining Order (TRO). Pursuant to Rule 65(b) of the Federal Rules of Civil Procedure, plaintiffs request this Court to enjoin defendants from prosecuting the plaintiff as an adult in the Puerto Rico Superior Court on January 16, 1990. They allege that proceeding with plaintiff Victor Robles' trial will cause immediate and irreparable harm. For the reasons stated below, we deny plaintiffs' motion.

PROCEDURAL AND FACTUAL BACKGROUND

On June 15, 1988, criminal complaints for first degree murder, robbery, and violations of the Puerto Rico Weapons Law were filed against plaintiff Victor J. Robles González in the Puerto Rico District Court, Caguas Part, Investigations Section, for criminal acts allegedly committed on June 14, 1988. Pursuant to the law then in effect, Puerto Rico Minors' Act, Law No. 88, of July 9, 1986, 34 L.P.R.A. § 2201, *et seq.*, as amended by Public Law No. 34 of June 19, 1987 (Law 34), the charges against plaintiff Robles were filed and have been prosecuted in the Superior Court of Puerto Rico, Caguas Part. An accusation for first degree murder against Robles was filed on October 10, 1988. On May 11, 1989, the accused filed two motions to dismiss the accusation alleging: (1) lack of jurisdiction of the Superior Court, Criminal Section, to

prosecute him as an adult and (2) the unconstitutionality of Law 34 under the Constitution of the Commonwealth of Puerto Rico. Both motions requested that the proceedings against Robles be transferred to the Minors' Court.

On June 19, 1989, Robles filed another motion requesting dismissal of the indictment based on the fact that Law 34 had expired on that day, and its application had not been extended by a new law enacted prior to its expiration. The motion alleged that all criminal charges against the accused and all minors between the ages of fourteen and eighteen who were being charged or prosecuted as adults in the Superior Court of Puerto Rico, Criminal Section because of the automatic waiver of the Minors' Court jurisdiction, should be dismissed and the proceedings transferred to the Minors' Court.

On June 29, 1989, Public Law 14 (Law 14) was enacted. This law also provides for the same automatic waiver of jurisdiction of the Minors' Court in cases where minors over the age of fourteen àre charged with murder. On July 26, 1989, the accused filed a motion alleging that Law 14 was not applicable to him because it only applies to acts committed after the date of its enactment.

The Superior Court denied all of Robles' motions and rescheduled trial for January 8, 1990. On January 3, 1990, the accused filed a petition for a Writ of Certiorari in the Supreme Court of Puerto Rico and a Motion to Stay, both of which were denied on January 5, 1990. Plaintiff Robles filed a Motion to Reconsider which was denied on January 8, 1990. The January 8 trial was reset for January 16.

Plaintiffs filed this action on January 12, 1990 seeking declaratory and injunctive relief against the enforcement of Laws 34 and 14 because they violate Robles' rights under the Constitution of the United States. They also request attorney's fees and costs.

## THE CHALLENGED STATUTES

Laws 34 and 14 amending the Minors' Act provide in pertinent part:

§ 2204 **Jurisdiction of the** [Minors'] **Court**

\*   \*   \*   \*   \*   \*

*The Court shall not have the power to take cognizance of:*

(a) Every case in which a minor who has attained the age of fourteen (14) years is charged with offenses that constitute murder.

(b) Every case in which a minor who has attained the age of fourteen (14) years is charged with criminal offenses that arise from the same transaction or event that constitutes murder.

(c) Every case in which a minor who has attained the age of fourteen (14) years is charged with criminal offenses when a murder has previously been adjudged to him in a regular proceeding as an adult.

In all the above cases, the minor shall be indicted as an adult.

The criminal part of the General Court of Justice shall retain jurisdiction over the minor even when there is an admission of guilt or a conviction for an offense other than murder.

34 L.P.R.A. § 2204 (Supp.1988).

Plaintiffs raise several claims based on the United States Constitution which they believe will entitle them to the requested relief. Specifically, they contend that (1) the automatic waiver of jurisdiction provision of Law 14 deprives Robles of his liberty without due process of law as guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution; (2) the prosecution of Robles under Law 14 violates the prohibition of ex post facto laws contained in Article I, Sections 9 and 10 of the United States Constitution; (3) Laws 34 and 14 constitute bills of attainder, which are also proscribed by Article I, Sections 9 and 10; (4) the trial of Robles as an adult and the classes created by Laws 34 and 14 violate his right to equal protection of the laws guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution; and (5) Robles' trial by jury as an adult violates his Sixth Amendment right to be tried by a jury selected from his peers and a fair cross section of

the community, as held in *Duren v. Missouri,* 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979).

## "OUR FEDERALISM" AND THE DOCTRINE OF ABSTENTION

In the landmark case of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the Supreme Court considered the propriety of a federal district court's injunction staying a pending state criminal proceeding. The Court reversed the district court,[1] holding that the circumstances in the case were insufficient to warrant federal intrusion into the pending state criminal proceedings. In its decision, the Supreme Court recognized that a "federal lawsuit to stop a prosecution in a state court is a serious matter," 401 U.S. at 42, 91 S.Ct. at 749, and discussed the important federal policy forbidding federal courts from enjoining state criminal proceedings:

> The precise reasons for this longstanding public policy against federal court intervention with state court proceedings have never been specifically identified but the primary sources of the policy are plain. One is the basic doctrine of equity jurisprudence that courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief. The doctrine may originally have grown out of circumstances peculiar to the English judicial system and not applicable in this country, but its fundamental purpose of restraining equity jurisdiction within narrow limits is equally important under our Constitution, in order to prevent erosion of the role of the jury and avoid a duplication of legal proceedings and legal sanctions where a single suit would be adequate to protect the rights asserted. This underlying reason for restraining courts of equity from *interfering with criminal prosecutions* is reinforced by an even more vital consideration, the notion of *"comity,"* that is *proper respect for state functions,* a

recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways. This ... is referred to by many as "Our Federalism...."

*Id.* at 43–44, 91 S.Ct. at 750 (emphasis added).

The concept of "Our Federalism" has been a part of our national heritage from the time the Constitution was enacted. The U.S. Constitution has framed and sustained the Democratic government of the United States, which was a revolutionary concept 200 years ago when it was enacted. The way we have decided to enact and enforce our laws is a crucial ingredient to the success of the Constitution. "The judicial power of the United States shall be vested in one Supreme Court, and in such inferior courts as the Congress may from time to time ordain and establish." United States Constitution, Article III, Section 1.

At the time the Constitution was enacted, the states already had their own courts, and the Anti–Federalists did not want to extend the power of the national government through the establishment of a federal court system. The views of the Anti–Federalists were accepted and incorporated into the Bill of Rights, which provides that the National Government: would not abrogate freedom of speech and religion, and would guarantee to every person "due process of law," indictment by a Grand Jury, the right to counsel in a criminal case, and jury trials.

Although the Federalists were successful in implementing a Federal Court System, this system has existed with acknowledged deference to state rights within the concept of "Our Federalism." A balance of powers has been achieved, and the present system is sensitive to the legitimate interests of both the State and National Government. The concept of "Our Federalism" avoids undue interference by the National Govern-

---

**1.** The district court injunction was issued by a three judge panel pursuant to 28 U.S.C. § 2284.

The Supreme Court directly reviewed the district court decision. 28 U.S.C. § 1253.

ment with the legitimate interests of the States. Full respect to each State's separate identity, heritage, culture, and idiosyncracies is inherent in the concept of "Our Federalism." Such respect is afforded to Puerto Rico, which for all practical purposes is treated as a State in this case. Therefore, the general rule, as *Younger* emphasized, is that the federal courts will not enjoin pending proceedings in state courts.

■ In the *Younger* decision, the Court explained that in order to justify federal intervention, the plaintiff must show irreparable injury in accordance with traditional doctrines governing the availability of injunctive relief. *Id.* at 46, 91 S.Ct. at 751. Moreover, the irreparable injury must be "great and immediate," and the mere inconvenience of having to defend against a criminal prosecution is not irreparable: "the threat to the plaintiff's rights must be one that *cannot be eliminated by his defense against a single prosecution." Id.* at 47, 91 S.Ct. at 752 (italics supplied). Accordingly, federal injunctions against state criminal statutes should never be granted as a matter of course, even when such statutes are unconstitutional.

In its specific holding, the *Younger* Court delineated the rare instances when federal injunctive relief might be available against pending state criminal proceedings: bad faith and harassment in the prosecution of the criminal offense, or in the absence of these "usual prerequisites," certain "extraordinary circumstances." The Court stated, as an example of such extraordinary circumstances, a statute which is "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph...." *Id.* at 53, 91 S.Ct. at 755. *See also United Books Inc. v. Conte,* 739 F.2d 30, 32 (1st Cir.1984). However, the possible unconstitutionality of a statute on its face does not justify a federal injunction against good faith attempts to enforce it.

■ Having these principles before us, we must now determine whether this Court should grant plaintiffs' request for a TRO. As previously stated, a criminal proceeding is now pending against Victor Robles in Puerto Rico's Superior Court, Caguas Part. Plaintiffs have made no suggestion that Robles' prosecution has been brought in bad faith or is one of a series of repeated, harassing prosecutions to which he will be subjected. Instead, plaintiffs claim that the extraordinary circumstances warranting federal interference are the challenged statutes, Laws 34 and 14, which are "flagrantly and patently violative of express constitutional prohibitions."

However, this Court need not address the merits of this argument because plaintiffs have failed to raise their federal constitutional challenges in the state criminal proceedings. In addition, they have failed to show that the criminal proceedings before the Puerto Rico Superior Court, do not provide the opportunity to raise Robles' federal constitutional claims. *See Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 17, 107 S.Ct. 1519, 1529, 95 L.Ed.2d 1 (1987) ("Because Texaco apparently did not give the Texas courts an opportunity to adjudicate its constitutional claims, and because Texas cannot demonstrate that Texas courts were not open to adjudicate its claims, there is no basis for concluding that the Texas law and procedures were so deficient that *Younger* abstention is inappropriate."). Plaintiffs have an adequate remedy at law, namely, the presentation of their federal constitutional claims before the Superior Court. Therefore, under these circumstances, this Court must not intervene and enjoin the pending state criminal proceedings.

Furthermore, plaintiff Robles' other alleged irreparable injuries are speculative at this time, because he has not yet been convicted. "If he should be convicted, the alleged harm is not irreparable, because he will be able to present his [federal] constitutional argument[s] on direct appeal ... [to the Puerto Rico Supreme Court], and if unsuccessful will also be able to present [them] in the federal courts, either via appeal or certiorari to the Supreme Court of the United States, or via habeas corpus in the inferior federal courts." *Jackson v. Cintron Garcia,* 665 F.2d 395, 396 (1st

Cir.1981). Thus, we do not find the extraordinary circumstances under *Younger* which would warrant enjoining the pending criminal proceeding in the Superior Court of Puerto Rico.

Wherefore, in light of the foregoing, plaintiffs motion is DENIED.

A hearing for a preliminary injunction is hereby SET for January 24, 1990, at 9:30 a.m.

IT IS SO ORDERED.