9 F.3d 1075
 The FAMILY FOUNDATION, INC., Concerned Women of America,
Inc., Walter E. Barbee, and Mary-Beth Larock,
Plaintiffs-Appellants,
v.
J. Howe BROWN, in his official capacity as Judge of the
Circuit Court of the County of Fairfax, Virginia,
Defendant-Appellee,
and
Democratic Party of Virginia; Mark R. Warner, as Chair and
as an individual voter; and Pixie Bell, as
Secretary and as an individual voter,
Intervenors-Appellees,
 No. 93-2377.
 United States Court of Appeals,
Fourth Circuit.
 Oct. 30, 1993.
 
 1
 James Bopp, Jr., Richard B. Coleson, Bopp, Coleson & Bostrom, Terre Haute, IN, M. Miller Baker, Carr, Goodson & Lee, Frank Northam, Webster, Chamberlain & Bean, Washington, DC, for appellants.
 
 
 2
 Jay B. Myerson, Reston, VA, John Hardin Young, State Party Counsel, Democratic Party of Virginia, Falls Church, VA, Michael Campilongo, Manassas, VA, L. Anthony Sutin, Washington, DC, for appellees.
 
 ORDER
 
 3
 Appellants have appealed from an order of the federal district court in the Eastern District of Virginia (Bryan, J.) entered yesterday afternoon dismissing their suit against appellees The Honorable J. Howe Brown, Fairfax County Circuit Judge, the Democratic Party of Virginia, Mark Warner, and Pixie Bell. Appellants challenged in the district court, under 42 U.S.C. Sec. 1983 and the First and Fourteenth Amendments to the United States Constitution, a temporary injunction entered by Judge Brown on Wednesday, October 27. Democratic Party of Virginia et al. v. The Family Foundation et al., Chancery No. 132062 (Cir.Ct. Fairfax). That injunction prohibits appellants and their "agents, representatives or associates" inter alia from distributing any writing about any candidates for elective office until they file a statement of organization with the Virginia State Board of Elections, as required of "committees" under Va.Code Sec. 24.1-254.1, and identify on any proposed writings the person responsible therefor and the authorization statement and Elections Board registration number, as required of "committees" under Va.Code Sec. 24.1-277. The injunction thereby prohibits appellants from further distributing their " '93 Voter's Guide'," a leaflet comparing the positions of the two candidates for Governor in the Virginia gubernatorial election scheduled for Tuesday, November 2, 1993.
 
 
 4
 The district court orally dismissed appellants' suit from the bench, on the authority of the Supreme Court's decision in Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), reasoning that they have an adequate state law remedy by way of appeal of Judge Brown's injunction to the Virginia Supreme Court. The Family Foundation, Inc. et al. v. J. Howe Brown, etc., No. CA 93-1339A (E.D.Va. Oct. 29, 1993). Appellants thereafter filed with this court an appeal from the district court's order dismissing their suit and, with me as a single Circuit Judge at approximately 4:15 p.m., a motion under Fed.R.App.P. 8(a) for an injunction of the state court injunction pending disposition of their appeal. They also filed a petition for review with the Virginia Supreme Court. I subsequently requested briefing from the appellees, which arrived in Chambers at approximately 8:00 p.m.
 
 
 5
 It is indisputable that appellants have a constitutionally protected interest of the highest order in further distribution of their leaflets prior to the November 2 state election. See, e.g., Organization for a Better Austin v. Keefe, 402 U.S. 415, 419, 91 S.Ct. 1575, 1578, 29 L.Ed.2d 1 (1971) ("Any prior restraint on expression comes to th[e] Court with a heavy presumption against its constitutional validity.") (citations omitted); New York Times Co. v. United States, 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971) (per curiam ). Their leaflets constitute core political speech which is, as it should be, accorded the utmost protection under the First and Fourteenth Amendments.
 
 
 6
 [I]f it be conceded that the First Amendment was 'fashioned to assure the unfettered interchange of ideas for the bringing about of political and social changes desired by the people,' then it can hardly be doubted that the constitutional guarantee has its fullest and most urgent application precisely to the conduct of campaigns for political office.
 
 
 7
 Monitor Patriot Co. v. Roy, 401 U.S. 265, 271-72, 91 S.Ct. 621, 625-26, 28 L.Ed.2d 35 (1971) (citation omitted). It is also indisputable that if an injunction of the state court injunction does not issue, and therefore that their claims are not heard before Monday morning when the Virginia Supreme Court has agreed to receive briefing, appellants will suffer substantial irreparable injury. Nonetheless, under the particular facts of this case, and without actually determining the merits of the pending appeal, see City of Alexandria v. Helms, 719 F.2d 699, 700-01 (4th Cir.1983), I do not believe that appellants have made the requisite strong showing of a likelihood of success on the merits of their claim that the district court erred in dismissing their suit under Younger v. Harris. See Hilton v. Braunskill, 481 U.S. 770, 776, 107 S.Ct. 2113, 2119, 95 L.Ed.2d 724 (1987); cf. Blackwelder Furniture Co. v. Seilig Mfg. Co., Inc., 550 F.2d 189, 194 (4th Cir.1977); Airport Comm. of Forsyth Co., N.C. v. Civil Aeronautics Bd., 296 F.2d 95, 96 (4th Cir.1961). Based upon the submissions of the parties, it appears likely that it was proper for the district court to stay its hand in the interest of comity and to permit protection of the appellants' free speech interests in the first instance in the courts of the Commonwealth of Virginia. That is, I believe it likely that the court will ultimately conclude as follows on the merits of appellants' claim that federal abstention was inappropriate.
 
 
 8
 First, the Commonwealth provides appellants the procedural means by which to challenge the state circuit court's injunction. By its terms, Va.Code Sec. 8.01-626 allows a party aggrieved by an injunction entered by a state circuit court to petition a justice of the Virginia Supreme Court for review. And appellants did not avail themselves of the procedure in section 8.01-626 before filing their suit in federal district court, as they were required to do under Younger. See Huffman v. Pursue, Ltd., 420 U.S. 592, 608, 95 S.Ct. 1200, 1210, 43 L.Ed.2d 482 (1975) ("a party [seeking federal court review of the judgment of a state judicial tribunal] must exhaust his state appellate remedies before seeking relief in the District Court."); see also id. at 608-09, 95 S.Ct. at 1210-11; New Orleans Pub. Serv., Inc. v. New Orleans, 491 U.S. 350, 369, 109 S.Ct. 2506, 2518, 105 L.Ed.2d 298 (1989); cf. Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 15-17, 107 S.Ct. 1519, 1528-29, 95 L.Ed.2d 1 (1987); compare Henry v. First National Bank of Clarksdale, 595 F.2d 291, 302 (5th Cir.1979) ("[F]ederal plaintiffs had exhausted all avenues of emergency state relief available to them....").
 
 
 9
 Second, interference with the Commonwealth's "unitary system" of trial and appellate fora, see New Orleans Pub. Serv., 491 U.S. at 369, 109 S.Ct. at 2518, through federal intervention prior to state appellate review, would have "deprive[d] the [Commonwealth] of a function which quite legitimately is left to [it], that of overseeing trial court dispositions of constitutional issues which arise in civil litigation over which [it has] jurisdiction." Huffman, 420 U.S. at 609, 95 S.Ct. at 1210 (footnote omitted); see also Pennzoil, 481 U.S. at 13-14, 107 S.Ct. at 1527-28 (Younger abstention appropriate in cases "involv[ing] challenges to the processes by which the state compels compliance with the judgments of its courts.") (footnote omitted); Juidice v. Vail, 430 U.S. 327, 335, 97 S.Ct. 1211, 1217, 51 L.Ed.2d 376 (1977) (contempt process is important state interest). It would have cast "a direct aspersion on the capabilities and good faith of [the Commonwealth's] appellate courts." Huffman, 420 U.S. at 608, 95 S.Ct. at 1210; see New Orleans Pub. Serv., 491 U.S. at 369, 109 S.Ct. at 2518 (federal intervention "midprocess would demonstrate a lack of respect for the State as sovereign").
 
 
 10
 Third, federal intervention by the district court would have interfered unnecessarily in the Commonwealth's administration of its own election process, the integrity of which the state " 'indisputably has a compelling interest in preserving,' " Burson v. Freeman, --- U.S. ----, ----, 112 S.Ct. 1846, 1852, 119 L.Ed.2d 5 (1992) (quoting Eu v. San Francisco Democratic Comm., 489 U.S. 214, 231, 109 S.Ct. 1013, 1024, 103 L.Ed.2d 271 (1989)), through the enforcement of its own election laws.
 
 
 11
 Fourth, federal adjudication of appellants' claims would have entailed "unwarranted determination of federal constitutional questions," Pennzoil, 481 U.S. at 11, 107 S.Ct. at 1526, because the Virginia Supreme Court may have resolved the case (and may still) on state statutory or constitutional grounds by, for example, holding that appellants had fully complied with the election law procedures which the state circuit court held appellants had violated, by accepting appellants' free speech claims under the Virginia constitution, or by otherwise invalidating the state circuit court's injunction. See id. at 11-12, 107 S.Ct. at 1526-27.
 
 
 12
 Federal intervention was not counseled by any of the "usual prerequisites" of bad faith or misconduct. Younger, 401 U.S. at 53, 91 S.Ct. at 754-55; see Gibson v. Berryhill, 411 U.S. 564, 577, 93 S.Ct. 1689, 1697, 36 L.Ed.2d 488 (1973) (alleged bias by state adjudicatory board). There is, for example, no suggestion by appellants, nor could there be, that the Virginia Supreme Court is unwilling to protect their constitutional rights, see Pennzoil, 481 U.S. at 16, 107 S.Ct. at 1529; Kugler v. Helfant, 421 U.S. 117, 124, 95 S.Ct. 1524, 1531, 44 L.Ed.2d 15. (1975), or that there has been any bad faith by either that court or the state circuit court. See, e.g., Younger, 401 U.S. at 48-49, 91 S.Ct. at 752-53. In fact, within several hours following the district court's dismissal of their action yesterday afternoon, the Virginia Supreme Court agreed to consider appellants' claims, and ordered briefing by the parties by 10:00 a.m. Monday morning.
 
 
 13
 Nor, given the availability of a fair and adequate state remedy at the very time when federal court intervention was sought, was there "a sufficient threat of such great, immediate, and irreparable injury," Kugler, 421 U.S. at 124-25, 95 S.Ct. at 1530-31, as to warrant intervention in the state judicial process pursuant to the recognized exception to Younger for "extraordinary circumstances." Younger, 401 U.S. at 53-54, 91 S.Ct. at 754-55. Indeed, at the time of the federal district court filing, the Virginia state courts were in the same position as the federal court to ensure that appellants did not suffer great and immediate irreparable injury. If appellants had petitioned the Virginia Supreme Court even as late as Friday morning, rather than proceeding in federal district court, that court might well have already considered their claims.
 
 
 14
 In sum, the courts of the Commonwealth were available to consider appellants' claims in a fair and timely manner following issuance of the state circuit court's injunction. Appellants chose to circumvent those courts by filing their suit directly in the federal district court. The state courts of Virginia, as a consequence, were denied the opportunity to address their own state law in an area of peculiar interest to the state--state election practices--and in a way that might have obviated the need for further consideration of appellants' federal constitutional claims. Especially given that the Virginia Supreme Court has agreed to consider even appellants' eleventh-hour petition, and perhaps would consider still further expedition of its review of the dispute, this would appear to be precisely the circumstances in which the Supreme Court has admonished that Younger abstention is appropriate.
 
 
 15
 Because appellants have not made a strong showing of a likelihood of success on the merits of their appeal, given the likelihood that the district court properly refrained on the instruction of Younger v. Harris from interfering with the judicial system of the Commonwealth of Virginia, the motion for injunction is denied.
 
 
 16
 Entered at 5:55 a.m., this 30th day of October, 1993.
 
 
 17
 __________
 
 J. Michael Luttig
 Circuit Judge