

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-17-2002

# Phila City Cncl v. Schweiker

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-2139

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"Phila City Cncl v. Schweiker" (2002). *2002 Decisions.* Paper 405.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/405

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No.  02-2139
_____

PHILA. CITY COUNCIL; ANNA C. VERNA, PRESIDENT OF CITY COUNCIL;
DAVID COHEN, CHAIR, LAW AND GOVERNMENT COMMITTEE OF CITY
COUNCIL; FRANK DICICCO, COUNCILMAN; JANNIE L. BLACKWELL,
COUNCILWOMAN; MICHAEL A. NUTTER, COUNCILMAN; JOAN L.
KRAJEWSKI, COUNCILWOMAN; DONNA REED MILLER, COUNCILWOMAN;
MARIAN B. TASCO, COUNCILWOMAN; W. WILSON GOODE, JR., COUNCILMAN;
JAMES F. KENNEY, COUNCILMAN; ANGEL L. ORTIZ, COUNCILMAN;
BLONDELL REYNOLDS BROWN, COUNCILWOMAN; SHIRLEY M. KITCHEN,
STATE SENATOR; W. CURTIS THOMAS, STATE REPRESENTATIVE;
HAROLD JAMES, STATE REPRESENTATIVE; JAMES R. ROEBUCK, STATE
REPRESENTATIVE; JOHN TIMOTHY KEARNEY; HANNAH LOUISE KEARNEY,
A MINOR; DINA LYNN SCHLOSSBERG; WENDELL HARRIS; ROSE LENTZ;
DELORES SHAW; PATRICIA RAYMOND; DEBORAH TONEY; PARENTS
UNITED FOR BETTER SCHOOLS; PARENTS UNION FOR PUBLIC SCHOOLS;
PHILADELPHIA STUDENT UNION; PHILADELPHIA BRANCH NAACP;
JEROME W. MONDESIRE, PRESIDENT OF THE PHILADELPHIA BRANCH NAACP;
NATIONAL CONGRESS FOR PUERTO RICAN RIGHTS - PHILADELPHIA CHAPTER;
RAY ALVAREZ, PRESIDENT, NATIONAL CONGRESS FOR PUERTO RICAN RIGHTS -
PHILADELPHIA CHAPTER; INSTITUTE FOR THE STUDY OF CIVIC VALUES;
NATIONAL ORGANIZATION FOR WOMEN - PHILADELPHIA CHAPTER,

Appellants

v.

MARK S. SCHWEIKER, HON. GOVERNOR; CHARLES R. ZOGBY, SECRETARY OF
EDUCATION; THE SCHOOL REFORM COMMISSION; JAMES E. NEVELS; CHAIRMAN;
JAMES GALLAGHER; SANDRA GLENN; MICHAEL MASCH;
DANIEL WHELAN, MEMBERS, SCHOOL REFORM COMMISSION

_____

On Appeal From the United States District Court
For the Eastern District of Pennsylvania
(D.C. Civ. No. 02-cv-00998)
District Judge: Honorable Ronald L. Buckwalter

_____

Argued: July 11, 2002

Before: BECKER, Chief Judge, McKEE, and GREENBERG,
Circuit Judges.

(Filed    July 17, 2002                    )

ALICE W. BALLARD, ESQUIRE (ARGUED)
FRANK FINCH, III, ESQUIRE
BALLARD & FINCH
225 South 15th Street, Suite 1700
Philadelphia, PA 19102

STANLEY J. SHAPIRO, ESQUIRE

City of Philadelphia
Technical Services Unit
Room 564 - City Hall
Philadelphia, PA 19107

BRUCE M. LUDWIG, ESQUIRE
GEORGE J. BADEY, III, ESQUIRE
DAVID J. BERNEY, ESQUIRE
Sheller, Ludwig & Badey
1528 Walnut Street, 3rd Floor
Philadelphia, PA 19102

JOSEPH C. KOHN, ESQUIRE
ROBERT J. LaROCCA, ESQUIRE
JOANNE ZACK, ESQUIRE
CRAIG W. HILLWIG, ESQUIRE
Kohn, Swift & Gaft, P.C.
One South Broad Street, Suite 2100
Philadelphia, PA 19107

Counsel for Appellants


D. MICHAEL FISHER, ESQUIRE
Attorney General
DANIEL J. DOYLE, ESQUIRE
Senior Deputy Attorney General
SUSAN J. FORNEY, ESQUIRE
Chief Deputy Attorney General
Office of Attorney General of Pennsylvania
Strawberry Square
Harrisburg, PA 17120

EDWARD F. MANNINO, ESQUIRE (ARGUED)
JASON A. SNYDERMAN, ESQUIRE
Akin, Gump. Strauss, Hauer & Feld, LLP
One Commerce Square
2005 Market Street, Suite 2200
Philadelphia, PA 19103

Counsel for Appellees Honorable Mark Schweiker and Charles Zogby

CARL E. SINGLEY, ESQUIRE (ARGUED)
MICHAEL J. HANLON, ESQUIRE
SCOTT F. COOPER, ESQUIRE
Blank, Rome, Comisky & McCauley, LLP
One Logan Square
Philadelphia, PA 19103-6998

Counsel for Appellees The School Reform Commission and Its
Individual Members, James Nevels, James Gallagher, Sandra Glenn,
Michael Masch and Daniel Whelan

DEBORAH R. WILLIG, ESQUIRE
RALPH J. TETI, ESQUIRE
ERIC M. FINK, ESQUIRE
Willig, Williams & Davidson
1845 Walnut Street, 24th Floor
Philadelphia, PA 19103

Counsel for Amici Curiae Committee to Keep Our
Public Schools Public, The Philadelphia Federation of
Teachers, National Conference of Firemen and Oilers
School Employees Union, Local 1201, SEIU, AFL-CIO, and
School Cafeteria Employees Union, Local 634 HERE, AFL-CIO

---

OPINION OF THE COURT

---

BECKER, Chief Judge.

This appeal arises out of a lawsuit brought in the District Court for the Eastern District of Pennsylvania by the Philadelphia City Council; a majority of its members; several state legislators; children and parents of children enrolled in the Philadelphia School; and several advocacy groups interested in the Philadelphia Public Schools. Named as defendants are Pennsylvania's Governor, its Secretary of Education, and the members of the School Reform Commission ("SRC") created pursuant to Acts 46 and 83 of the Pennsylvania General Assembly, see Act of Apr. 27, 1998, P.L. 270, No. 46   2-3; Act of Oct. 30, 2001, P.L. 828, No. 83   1 (codified as amended at 24 P.S.   6-691-6-696).  Acts 46 and 83 authorize the SRC to take over the operations of the School District of Philadelphia if and when a Declaration of Distress is made by the Secretary. The suit challenges the creation and powers of the SRC and the procedures by which the recent "takeover" of the Philadelphia school system was effected, on a number of state law, federal law, state constitutional, and federal constitutional grounds.

This opinion addresses the plaintiffs' appeal from orders entered by the District Court granting the defendants' motion to abstain essentially on the basis of the doctrine of "Pullman abstention" (which takes its name from the seminal Supreme Court case Railroad Commission of Texas v. Pullman Co., 312 U.S. 496 (1941)), staying the federal proceedings pending litigation in state court, and dismissing plaintiffs' motion to reconsider.  The plaintiffs also contend that the District Court erred in failing to consider their motions for a temporary restraining order and a preliminary injunction.  Although the factual and procedural history of the case is extensive, it need not be chronicled here, for it is well known to the parties (and indeed to the general public, for the facts underlying this lawsuit and the progress of the suit itself and of related suits have been widely publicized).  Moreover, as was agreed by the parties at the conclusion of oral argument, the public interest will be better served by a prompt disposition of this appeal than by a lengthy opinion which will perforce take a long time to draft.  Accordingly, we limit our discussion to background materials and a statement of our ratio decidendi.

I.

At the threshold, the defendants challenge our appellate jurisdiction (advanced by the plaintiffs under 28 U.S.C.   1291) on the grounds that the principal order appealed from, which grants a stay, is not a final order.  We disagree.  Under our jurisprudence an abstention-based stay order can be a final order under   1291 even when the District Court retains jurisdiction.  See Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 712-13 (1996);  see also Hovsons, Inc. v. Sec'y of Interior, 711 F.2d 1208, 1211 (3d Cir. 1983) (holding that Pullman-abstention stays are appealable final orders).  As explained in 17A Wright, Miller & Cooper, Federal Practice & Procedure   4243, at 68 (2d ed. 1988):

> Since the federal court is to retain jurisdiction, its abstention order does not look like a final judgment.  Nevertheless the consequences of abstention to the litigants are often so great that the appellate courts have provided immediate review . . . .

See also 19 James Wm. Moore et al., Moore's Federal Practice   202.11[6], at 202-56 (Matthew Bender 3d ed.) ("Generally, an order granting abstention is appealable when its purpose and effect is to surrender jurisdiction to a state court.").  Because the District Court's decision essentially left the matter up to the Pennsylvania Supreme Court, we treat it as a final order that is appealable.

II.

We turn to the abstention issue.  The defendants ask that we treat the District

Court's ruling as a combination of abstention under Pullman, supra, and Burford v. Sun Oil Co., 319 U.S. 315 (1943), urging that although a court's decision to abstain is usually classified by reference to one of the discrete categories of abstention doctrine, the Supreme Court has noted that "[t]he various types of abstention are not rigid pigeonholes into which federal courts must try to fit cases. Rather, they reflect a complex of considerations designed to soften the tensions inherent in a system that contemplates parallel judicial processes." Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 11 n.9 (1987). Because we are satisfied that the District Court's abstention was proper under Pullman, we need not decide whether the District Court's order was also justified under the doctrine of Burford abstention, or some amalgam of the two doctrines.

One of the main purposes of Pullman abstention is "to avoid deciding a federal constitutional question when the question may be disposed on questions of state law." Chiropractic Am. v. Lavecchia, 180 F.3d 99, 103 (3d Cir. 1999). In other words, Pullman abstention "is appropriate where an unconstrued state statute is susceptible of a construction by the state judiciary which might avoid in whole or in part the necessity for federal constitutional adjudication, or at least materially change the nature of the problem." Bellotti v. Baird, 428 U.S. 132, 147 (1976) (internal quotations and citation omitted). We have identified the rationale for Pullman abstention as "twofold: (1) to avoid a premature constitutional adjudication which could ultimately be displaced by a state court adjudication of state law; and (2) to avoid 'needless friction with state policies.'" Planned Parenthood of Central N.J. v. Farmer, 220 F.3d 127, 149 (3d Cir. 2000) (quoting Pullman, 312 U.S. at 500).

The first step in the Pullman analysis is determining whether three "special circumstances" exist:

> (1) There are uncertain issues of state law underlying the federal constitutional claims brought in federal court;
>
> (2) The state law issues are amenable to a state court interpretation that would obviate the need for, or substantially narrow, the scope of adjudication of the constitutional claims; and
>
> (3) A federal court's erroneous construction of state law would be disruptive of important state policies.

Chez Sez III Corp. v. Township of Union, 945 F.2d 628, 631 (3d Cir. 1991). If all three of these circumstances are present, the district court must then exercise its discretion as to whether abstention is appropriate "by weighing such factors as the availability of an adequate state remedy, the length of time the litigation has been pending, and the impact of delay on the litigants." Planned Parenthood, 220 F.3d at 150 (quoting Artway v. Attorney Gen. of N.J., 81 F.3d 1235, 1270 (3d Cir. 1996)). We refer to these considerations, infra, as the "discretionary factors."

In reviewing a district court's decision to abstain under Pullman, we apply a multi-pronged standard of review. See Chez Sez, 945 F.2d at 631. The district court's determinations as to the first two special circumstances — whether state law is uncertain and whether the law is susceptible to a construction that would obviate or narrow the constitutional issue presented — are essentially legal decisions that we review de novo. Id. The district court's appraisal of the third circumstance — whether an erroneous decision of state law by the federal court would disrupt important state policies — "is more discretionary in nature and thus, if it is adequately explained, will be accorded greater deference by the appellate court." Id.; see also Artway, 81 F.3d at 1271 n.35. Finally, if we agree that the district court was correct on the three special circumstances, "the remaining question is whether the trial judge abused his discretion in" considering the aforementioned discretionary factors. Chez Sez, 945 F.2d at 631 (citation omitted).

### III.

### A.

We are satisfied that the requirements for Pullman abstention have been met. The first Pullman prong turns on the existence of unclear issues of state law. Plaintiffs' complaint is suffused with alleged violations of state law. Plaintiffs contend that all of the violations are clear, but we disagree. The District Court's opinion lists as unclear a number of issues of state law, which we rescribe in the margin. We agree with its characterization of a sufficient number of them to meet the first Pullman prong.

Turning to the second prong, the plaintiffs contend that the District Court never

identified the supposed limiting construction of Acts 46 and 83 that would avoid the plaintiffs' constitutional challenge. But there is no legal requirement that the District Court make such a construction. What suffices here is the District Court's identification of the possibility that a limiting construction could obviate the need for federal constitutional inquiry, which we find sufficient. We focus particularly on the question of the proper scope of the Secretary's "distress" determination, which lies at the core of plaintiffs' due process/vagueness challenge. This seems especially appropriate for a state court construction, and the state court's interpretation of this provision could markedly limit the scope of any federal constitutional issues.

We note in this regard that plaintiffs appear to assume that Pullman abstention is appropriate only if interpretation of the state law issues could save the statute from constitutional attack. However, while a potential saving construction is one basis for abstention, it is not the only one. Rather, abstention is appropriate when resolution of the state law issues would obviate the need for constitutional inquiry altogether, such as where a state court invalidates the challenged law on state law or constitutional grounds. See Pullman, 312 U.S. at 501 ("If there was no warrant in state law for the Commission's assumption of authority there is an end of the litigation; the constitutional issue does not arise."); Erwin Chemerinsky, Federal Jurisdiction   12.2, at 690 (2d ed. 1994) (noting that one of the purposes behind Pullman abstention is "avoiding unnecessary constitutional rulings"; "[i]f the state court invalidates the state law, then there is no need for the federal court to reach the constitutional question"). In this sense the plaintiffs are hoist on their own petard. Throughout their complaint they allege that Acts 46 and 83 violate numerous state law and constitutional provisions. If this is indeed so, then the acts are illegal under state law or unconstitutional under the state constitution, and a federal court would not need to decide whether they violate the federal Constitution.

The plaintiffs also submit that "abstention is not required for interpretation of parallel state constitutional provisions." Haw. Hous. Auth. v. Midkiff, 467 U.S. 229, 237 n.4 (1984). However, the plaintiffs have not attacked Acts 46 and 83 solely on the basis of "parallel state constitutional provisions." Rather, they have attacked the acts as violations of state law and state constitutional provisions that have no parallel in the federal Constitution. See, e.g., Article IX,  2 ("[A]mendment or repeal of a home rule charter shall be by referendum."), and Article III,  32 (prohibition on "special" legislation). This case thus differs from Midkiff, where the parties attacked the state's action on a provision of the Hawaii Constitution that contained "only a parallel requirement that a taking be for a public use." 467 U.S. at 237 n.4.

Finally, we are satisfied that an erroneous construction of state law in this case would have the potential to disrupt important state policies, thereby fulfilling the third Pullman prong. It is well-known that education is a state policy of paramount importance. See Brown v. Bd. of Educ., 347 U.S. 483, 493 (1954) (noting that "education is perhaps the most important function of state and local governments"). Should a federal court misinterpret any of the numerous state legal and constitutional provisions relied on by the plaintiffs, the course of Pennsylvania educational policy, particularly as directed toward the Philadelphia public schools, could be radically altered.

The plaintiffs contend that the third prong of Pullman is not fulfilled because Acts 46 and 83 reflect no important public "policy," but rather only "politics." We disagree, for in a representative democracy, "politics" and "policy," to the extent a distinction between the two concepts exists at all, are always intertwined. The fact that "political" considerations played a substantial role in the state's "policy" decisions does not make those policies   however wisely or unwisely adopted   any less "important" for the purposes of Pullman analysis.

                                          B.

The Pullman discretionary factors may be dealt with summarily. Under a deferential standard of review, we can find no fault with the District Court's rejection of plaintiffs' contention that abstention is inappropriate because the present case "involves the infringement and burdening of rights to vote and to participate in the political process," "fundamental rights [which] are virtually never appropriate for abstention." Br. of Appellants at 32. While a federal court ought to take into account the nature of the federal interest asserted in deciding whether to abstain, see, e.g., Siegel v. LePore, 234 F.3d 1163, 1174 (11th Cir. 2000) (en banc), this is simply one factor that ought to be

considered, not a factor that automatically makes abstention inappropriate.  At all events, the plaintiffs' case is not a straightforward voting rights case.  Rather, as the SRC points out, even before Acts 46 and 83, the members of the Board of Education were appointed, not elected.  And, from 1911 to 1965, members of the Philadelphia Board of Education were appointed by the Judges of the Courts of Common Pleas.  Thus the source of the plaintiffs' putative voting right is at best highly elusive, if existent at all.  We also note this regard that the structure and governance of the Philadelphia School Board has always been the province of the Pennsylvania General Assembly.  The right asserted here is a more vague "right to participate in the political process," a right for which the plaintiffs have identified no firm rooting in constitutional jurisprudence.

Nor can we fault the District Court's evaluation of the discretionary factors.  The key factor is the existence of an available state forum, but we are unpersuaded that the Pennsylvania Supreme Court's summary rejection of two cases dealing with these issues brought by other parties, notwithstanding its direct statutory jurisdiction authorizing bypass of the trial level, see Section 27 of Act 46, 24 P.S.    6-691 & 6-696 (Historical and Statutory Notes) (West Supp. 2002), means that the Pennsylvania high court will reject the suit brought by the "marquis" parties, who are before us and who also have pressed a number of additional issues.  There appear to be no standing-type issues here, as there apparently were in the cases the Pennsylvania Supreme Court declined to hear.  In sum, we believe that there is an available state forum.

The Orders of the District Court will be affirmed.                    _____

TO THE CLERK:

Please file the foregoing Opinion.

BY THE COURT:

/s/Edward R. Becker

_____

Chief Judge