

# Fourth Court of Appeals
## San Antonio, Texas

### DISSENTING OPINION

No. 04-12-00630-CV

**THE HUFF ENERGY FUND, L.P.**, WRH Energy Partners, L.L.C., William R. "Bill" Huff,
Rick D'Angelo, Ed Dartley, Bryan Bloom, and Riley-Huff Energy Group, LLC,
Appellants

v.

**LONGVIEW ENERGY COMPANY**,
Appellee

From the 365th Judicial District Court, Zavala County, Texas
Trial Court No. 11-09-12583-ZCVAJA
Honorable Amado J. Abascal, III, Judge Presiding

Opinion by:    Sandee Bryan Marion, Justice
Dissenting Opinion by:  Rebeca C. Martinez, Justice

Sitting:        Sandee Bryan Marion, Justice
               Marialyn Barnard, Justice
               Rebeca C. Martinez, Justice

Delivered and Filed:  February 12, 2014

Because I believe the $25 million cap on a supersedeas bond contained in Civil Practice

and Remedies Code section 52.006(b)(2) applies per judgment debtor, I respectfully dissent from

that portion of the majority's opinion. TEX. CIV. PRAC. & REM. CODE ANN. § 52.006(b)(2) (West

2008).

Here, the final judgment awarded to Longview Energy Company both money (certain

production revenues plus $95.5 million) *and* property in the form of a constructive trust over leases

and mineral interests covering a large number of acres in the Eagle Ford shale. Chapter 52 of the

Civil Practice and Remedies Code provides for security posted by a judgment debtor to suspend execution of the judgment pending appeal. While I agree with the majority that Rule 24.1(e) authorizes the trial court to order "the periodic reporting to monitor the trust assets included in the *property* award during pendency of the appeal" (emphasis added), such authority is not an adequate alternative to sufficient security for the money judgment awarded to Longview. *See* TEX. R. APP. P. 24.1(e).

On appeal, appellants argue that the Legislature's "unequivocal intent" in passing the 2003 enactments codified under Chapter 52 was to impose a $25 million per judgment cap on the security required on appeal, which reflects a policy determination that a $25 million bond or deposit is sufficient security to cover the vast majority of judgments entered in Texas. Appellants argue that it would be "absurd" to construe section 52.006(b)(2) other than as a per judgment cap, particularly when read in the context of these enactments following the *Texaco v. Pennzoil* opinion, and in light of the $25 million per judgment cap imposed in seven other states.[1] Why, appellants argue, would the legislature, after enacting sweeping tort reform legislation, leave the trial court with the same "unlimited discretion to impose unlimited bonds where there are multiple judgment

---

[1] Appellants' brief cites the following state statutes: ARK. CODE ANN. § 16.55-214(a) (maximum appeal bond required in any civil action under any legal theory limited to $25 million *regardless of the amount of the judgment*); COLO. REV. STAT. ANN. § 13-16-125(1) (total amount of the supersedeas bonds that are required *collectively* of all appellants during the appeal of a civil action may not exceed twenty-five million dollars *in the aggregate,* regardless of the amount of the judgment that is appealed); GA. CODE ANN. § 5-6-46(b) (the total supersedeas bond or other form of security that is required of all appellants *collectively* shall not exceed $25 million regardless of the value of the judgment); MICH. COMP. LAWS ANN. § 600.2607(1) (the bond shall not exceed $25,000,000.00 regardless of the amount of the judgment); N.D. CODE § 28-21-25 (the total supersedeas bond that is *required of all appellants* may not exceed $25 million irrespective of the amount of the judgment); S.D. CODIFIED LAW § 15-26A-26 (the amount of the bond required *collectively* of all appellants may not exceed twenty-five million dollars regardless of the amount of judgment); TENN. CODE ANN. § 27-1-124(a) (the amount of the appeal bond necessary to stay execution during the course of all appeals or discretionary reviews *of that judgment* by any appellate court shall not exceed the lesser of twenty-five million dollars ($25,000,000) or one hundred twenty-five percent (125%) of the judgment amount); VA. CODE ANN. § 8.01-676.1(J) (the total appeal bond or irrevocable letter of credit that is required of an *appellant and all of its affiliates* shall not exceed $25 million, regardless of the value of the judgment).

debtors" as it had in *Texaco, Inc. v. Pennzoil Co.*, 784 F.2d 1133 (2d Cir. 1986), *rev'd on other grounds*, 481 U.S. 1 (1986). "The sky is the limit," they argue.

The legislative intent to impose a cap under Chapter 52 to aid the judgment debtor's right to meaningful and easier access to appellate review is clear, but I disagree with appellants that "all roads lead to the same conclusion." Both proponents and opponents of House Bill 4 brought forth concerns addressing the high cost of an appeal bond as well as a judgment creditor's ability to recover the full amount of damages if the defendant defaulted on the bond. Section 52.006 satisfies the competing interests by *limiting* the supersedeas bond required for a money judgment to compensatory damages, interest for the duration of the appeal, and costs awarded in the judgment and, further, by *imposing a cap* on the required security amount of the lesser of 50% of the judgment debtor's net worth or $25 million. TEX. CIV. PRAC. & REM. CODE ANN. § 52.006 (West 2008). Again, I believe section 52.006, the product of this legislative "balancing," is clearly and unambiguously read in context to apply per judgment debtor. If read to apply per judgment, the effect of section 52.006(b)(2) would be to undermine the directives under the appellate rules which pertain to each respective appellant, ignore the section's limited applicability, and undermine the trial court's discretion to consider the intended relief permitted to a judgment debtor under the very same section. Net worth and economic harm become completely inapposite.

Appellants also fail to recognize that the amendments to Chapter 52 and Rule 24 eased the burden on a judgment debtor seeking to suspend enforcement of a judgment during appeal and, likewise, restricted the trial court's discretion and subsequent appellate review to an amount not exceeding that allowed under section 52.006. Added in 2003, section 52.006 lowered the security required "when a judgment is for money," not for all civil judgments pending appeal, and was specifically intended to exclude the need to supersede punitive damages. The Legislature provided

relief to a judgment debtor against possible insolvency or cost-prohibitive expense of an appeal bond caused by a large punitive damages award; a judgment debtor now need only post an appeal bond equal to the sum of the amount of compensatory damages awarded in the judgment, decreased interest for the estimated duration of the appeal, and costs awarded in the judgment – subject to the statutory cap. *Id.* § 52.006(a), (b); *see* TEX. FIN. CODE ANN. § 304.003 (West 2006) (the 2003 Legislature also lowered prejudgment and post-judgment interest rates to the current ceiling tied to the prime rate). The trial court's discretion to determine the amount of security was preserved, yet limited, by a ceiling or "cap," the lesser of twenty-five million dollars *or* fifty percent of the judgment debtor's net worth. The cap is clearly determined by a single judgment debtor's net worth, not by the value of the judgment or judgment debtors "collectively" or "in the aggregate," and the amount may still be further reduced by a showing of substantial economic harm. TEX. CIV. PRAC. & REM. CODE ANN. § 52.006(c); TEX. R. APP. P. 24.2(b) (amount lowered if trial court finds posting security is likely to cause *the judgment debtor* substantial harm; applicable to *all* judgments) (emphasis added). Concurrently, an appellate court cannot modify the amount of security required of a judgment debtor to exceed the amount allowed under said limitations and cap. *Id*. § 52.006(d); TEX. R. APP. P. 24.2 (amended in 2003 to coincide with section 52.006). Nowhere in Chapter 52 is there explicit language imposing a cap on the amount of security required with reference to the value of the judgment or the number of judgment debtors, notwithstanding the legislature's use of "collectively" and "in the aggregate" elsewhere.

While the majority recognizes that Chapter 52 refers to "judgment debtor" in the singular[2], its construction linking "security" with "the judgment" disregards the plain and explicit language

---

[2] Rule 24, also amended in 2003, determined the amount of security required to stay enforcement of a judgment pending appeal, depending on whether the award is money or property. *Compare* TEX. R. APP. P. 24.2(a)(1) ("For recovery of money") *with* 24.2(a)(2) ("For recovery of property"). The procedure for allowing security in a lesser amount upon a showing of substantial economic harm under 24.2(b), as well as section 52.006(c), is made applicable

used in the sole definition provided within Chapter 52. The majority acknowledges that proper construction of a statute requires consideration of the whole statute and not merely its individual provisions, that we apply a precise definition apparent from the term's use in the context of the statute, and that words and phrases shall be read in the context of the statute, yet it simply ignores the Legislature's discernable intent to define "security," *as used "[i]n this chapter*," to mean "a bond or deposit posted, as provided by the Texas Rules of Appellate Procedure, *by a judgment debtor* to suspend execution of the judgment during appeal of the judgment." TEX. CIV. PRAC. & REM. CODE ANN. § 52.001 (West 2008) (emphasis added). The Legislature assigned a particular meaning to the term "security," which notably has been unedited since 1989, and we must presume it had the definition in mind when structuring the language of section 52.006, its use of security therein with reference back to its definition.

Harmonious with the clear language of the statute, the Legislature's intent to lessen the burden on a judgment debtor seeking security is achieved by restricting the amount of security calculated by reference to the nature of the judgment (recovery for money) *at the very least* per section 52.006(a), and by reference to the judgment debtor's net worth (clearly used singularly) *at most* per section 52.006(b). The weight is further reduced by considering economic harm to "the judgment debtor" under sections 52.006(c) and (e), and is applicable to *all* judgments, regardless of the nature of recovery. *Id.* § 52.006(c), (e). The majority's construction of the words "the judgment" as linked to the term "security" necessarily disregards the term's definition and challenges the clearly restricted applicability of section 52.006, i.e., when a judgment is for money. We must presume that the Legislature purposefully refused to incorporate the same or similar

---

to *all* judgments, and "the judgment debtor" as used therein is necessarily read singularly, as it must consistently be read under both Rule 24 and Chapter 52, respectively. Appellants, it would seem, construe "the judgment debtor" singularly in one subsection, but plural in a parallel subsection, under both Chapter 52 and Rule 24.

explicit language used by other states adopting a $25 million per judgment cap, and that it would certainly have had reference to that language. If a per judgment cap was intended, the Legislature would have made other uniform statutory amendments to the Civil Practice and Remedies Code, the Appellate Rules, particularly Rule 24, and other codifications accordingly.

By a plain reading of the statutory definition of the term "security," I cannot agree with the majority to construe section 52.006 in context to measure or cap the amount of security with reference only to the value of "the judgment," disregarding "security" as it is statutorily defined. As a means to an end, the majority concludes that the "policy shift" behind section 52.006 favoring judgment debtors, together with the one-judgment rule, supports the conclusion that the $25 million cap under section 52.006(b)(2) is per judgment and not per judgment debtor. The majority agrees with appellants' argument to read the statute in furtherance of the perceived policy shift substantially favoring judgment debtors, and yet goes further by proposing that a per judgment cap achieves a "new balance" that still preserves the original interest in protecting judgment creditors "when a single judgment is rendered against multiple judgment debtors jointly and severally." Not to "wholly discard" the judgment creditor, the majority points to the trial court's injunctive authority available to prevent dissipation or transfer of assets under section 52.006(e) as weighing in favor of judgment creditors. *Id.* § 52.006(e).

To do so, however, would ignore the fact that only section 52.006(e) applies without restriction to money judgments and whether or not supersedeas or other appellate security is posted on appeal, and provides the judgment debtor added relief against any interference with the judgment debtor's use, transfer, conveyance, or dissipation of assets in the normal course of business. *Id.* Consequently, I fail to see how a more restricted injunctive remedy, which is irrelevant to security and further constrains the trial court's authority under TEX. R. APP. P. 24.1(e)

(trial court may make any order necessary to adequately protect judgment creditor against loss or damage that appeal might cause), affords any weight against a per judgment cap. If read unequivocally to mean "per judgment," the $25 million cap under section 52.006(b)(2) becomes less a means to afford appellate access and more of an unintended inequitable retreat from the original purpose of a supersedeas bond.

I also part from the majority on its disagreement with the Tyler Court of Appeals, which correctly held that the $25 million cap imposed by subsection 52.006(b) applies per judgment debtor instead of per judgment. *See O'Quinn v. Wood*, No. 12-08-00011-CV, 2009 WL 2367133, at *6 (Tex. App.—Tyler June 10, 2009, order). The majority relies heavily on Professor Carlson's writing yet disagrees with her and the court, which reached this conclusion after analyzing legislative intent under the general rules of statutory construction. *Id.* The Tyler court noted that, "a statute is presumed to have been enacted by the legislature with complete knowledge of the existing law and with reference to it" and "[i]t is also presumed, when examining amendments to existing legislation, that the legislature was aware of case law affecting or relating to the statute." *Id.* at *7; *see also Acker v. Tex. Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990) (same). The Tyler court further concluded that, "[b]ecause the legislature, with presumed knowledge of the holding in *Fortune*, imposed the $25,000,000.00 cap 'notwithstanding any other law,' . . . joint bonds are not excepted from the cap." *Id.* (citing *Fortune v. McElhenney*, 645 S.W.2d 934, 935 (Tex. App.—Austin 1983, no writ)). Finally, the court noted that, "[u]nder the holding in *Fortune*, when a joint bond is in the amount of the judgment, the surety must be liable for the entire amount if the judgment is affirmed with respect to any appellant . . . But [under section 52.006(b)(2)] the amount required per judgment debtor cannot exceed $25,000,000.00." *Id.*

By construing section 52.006(b)(2) to cap the amount of security on a per judgment basis, even where the security is less than adequate to protect the judgment creditor's award of non-punitive damages against multiple judgment debtors, the majority's construction of the statute heeds no clear legislative intent and succeeds only in usurping the trial court's discretion intentionally preserved to best weigh the adequacy of protection for the judgment creditor against any loss or damage during appeal while simultaneously improving access to appeal and protecting the judgment debtor from substantial economic harm. Nothing in the Legislature's course of amending Chapter 52 or Appellate Rule 24 since 1989 can suggest this construction. Should the Texas Legislature choose to join other states in adopting a per judgment cap, it may further amend the current statutes to so state. Until then, I decline to so construe our current statutory scheme.

For the foregoing reasons, I would conclude that the $25 million cap currently found in section 52.006(b)(2) applies per judgment debtor, and that the trial court's order requiring all appellants except Huff Energy to post an additional bond was not an abuse of discretion. Importantly, any judgment debtor may make a showing before the trial court under section 52.006(c) to lower the amount of security. Because I agree with the majority's conclusion regarding the trial court's order granting post-judgment discovery, I would deny appellants' Rule 24.4 Motion on all grounds.

Rebeca C. Martinez, Justice